UTICA,
August, 1829.

Sewall
v.
Catlin.

---

## H. D. SEWALL, survivor, &c. vs. CATLIN.

THIS was an action of slander tried, at the New-York circuit in October, 1827, before the Hon. REUBEN HYDE WALWORTH, then one of the circuit judges. The declaration alleged special damage.

The first witness called by the plaintiff was Samuel Whittemore, who testified that early in the morning of the fifteenth day of September, 1825, he met the defendant in the street, and put to him the question which was then very common, "Were there any failures yesterday?" (failures being very frequent in those days in consequence of the rage for cotton speculations,) to which the defendant answered, "Not that I know of; but I understand that there is trouble with the Messrs. Sewalls." On witness expressing his confidence in the solvency of the Messrs Sewalls, the defendant observed, "I can't tell whether it is true or not." From what the defendant said the witness supposed he intended to convey the idea that the Sewalls either had failed or would fail. This

Where, in answer to an inquiry, "Were there any failures yesterday"? it was said, "Not that I know of, but I understand that there is trouble with the Messrs. S.," it was holden that such words being spoken of the plaintiffs as merchants, were actionable in themselves.

Any words which in common acceptation imply a want of credit or responsibility, when spoken of a merchant, are actionable.

Where such words were spoken by a defendant, evidence that another person heard the report that the plaintiffs had failed, and in consequence withdrew from them business to a large amount, is inadmissible in support of a charge for special damage, unless the report thus acted upon is traced to the defendant.

A bank director is not justified in making a communication to a co-director in the public streets, affecting the credit or responsibility of a merchant, where there is no evidence of such communication being confidential. At a meeting of the board of directors, he would be justified in communicating to his associates any report which he might have heard in relation to the solvency or circumstances of the customers of the bank, or probably of any other person. His motive in such case would be presumed to be innocent, which presumption could only be repelled by proof of express malice.

UTICA,
August 1829.

Sewall
v.
Catlin.

part of the testimony was objected to, but admitted by the judge as proper in support of the charge of special damage : the judge expressing his opinion that the words were not in themselves actionable. The witness further testified that he was a director of the Delaware and Hudson bank; that the Messrs. Sewalls had notes running there which he had used his influence to have discounted, and therefore felt anxious to ascertain whether there was any truth in the report. He inquired of Mr. Heyer, the cashier of the New-York bank, whether there were any failures the preceding day, and on his answering that he knew of none, witness communicated to him the substance of what he had heard from the defendant. The defendant also was a director of the Delaware and Hudson bank, and president or cashier of another bank. The witness said that he did not think that the defendant was actuated by malice towards the Messrs. Sewalls in making the communication to him, and that he, the witness, did not know but that it might be the duty of one bank director to give such information to another.

Robert Gracie, another witness for the plaintiff, testified that on the sixteenth day of September, 1825, the mercantile house of Rogers & Gracie, of which he was a member, held the note of the Messrs. Sewalls, and offered it with the indorsement of his house for discount at the New-York bank : it was not discounted, but handed back by Mr. Heyer, the cashier, who told the witness that the Messrs. Sewalls had failed. Witness related to his partner what the cashier had said.

The plaintiff offered to prove by N. G. Carnes, another witness produced by him, that he heard the report that the Sewalls had failed, and that in consequence thereof, his house took away from them business worth $1500 a year ; and that he heard the report as coming from the house of Rogers and Gracie. This evidence was objected to unless it was shewn that the report did in fact come from Rogers and Gracie. The judge decided that the evidence was inadmissible unless the report could be traced to the defendant ; that where the plaintiff claimed general damages in consequence of a slander either started or repeated by the defendant, the

jury in estimating such damages, might always take into consideration the probable effect of such slander, and give damages accordingly ; but to enable the plaintiff to recover for any specific injury which he had sustained, it was necessary for him to trace the report which caused the injury to the defendant. The plaintiff next offered to prove that a report that the Messrs. Sewalls had failed was current in the city immediately after the conversation between the first witness and the defendant, and that in consequence of such report, the plaintiff sustained the special damage laid in the declaration ; this evidence was also rejected. The plaintiff rested, and the judge directed a nonsuit to be entered. A motion was now made to set aside the nonsuit.

*J. Blunt,* for plaintiff. The words were in themselves actionable, imputing to the Messrs. Sewalls a want of credit as merchants. (Starkie on Slander, 117.) The fact that the defendant and the witness to whom the communication was made were both directors of the same monied institution, furnishes no excuse, under the circumstances of this case. The communication was made in the street, and not at a meeting of the board of directors where the defendant might have conceived it his duty to give such information as he possessed in relation to the parties.

The defendant is liable for the consequences naturally resulting from the speaking of the words. It was not necessary to trace the report, in its progress, from the defendant to the person who withdrew his business from the plaintiff, by means of which he sustained the special damage. (Starkie on Slander passim. 2 Starkie's Ev. 850. 3 Wils. 186. 5 Binney, 221.)

*W. Slosson,* for defendant. To maintain this action it must be shewn that there was *malice* in the defendant. (Starkie on Slander, 219. 2 East, 425.) What was said by him was qualified : he could not say whether the report was true or not, and the witness expressly screened him from any malicious intent ; the malice, therefore, instead of being proved was negatived.

The defendant was under a moral obligation to communicate to his co-director what he had heard relative to the circumstances of the Messrs. Sewalls, and being under such obligation, he is not liable to an action unless express malice is shewn. (3 Johns. R. 180. 1 T. R. 110.)

The proof of special damage was properly rejected. The defendant was not accountable for the speaking of words occasioning special damage to the plaintiffs, unless it was shewn that such speaking was caused by what had been said by him.

*R. Sedgwick*, in reply. The principal question is, was the occasion such as to justify the speaking of the words complained of? Allowing that the defendant had the right to make the communication to the witness, at a proper time and place, it is denied that he had the right to speak on the subject in the public street ; and at all events, it should have been submitted to the jury to say whether the defendant should be considered as acting officially in making the communication, or as maliciously giving currency to a rumor injurious to the plaintiffs.

*By the Court,* SUTHERLAND, J. The defendant was not justified in speaking the words in question on the ground that he and the witness to whom they were addressed were both directors of the same bank. They were not spoken at the board of directors with a view of communicating information, which might properly influence the operation of the board. A bank director would undoubtedly be justified in communicating to his associates any report which he might have heard in relation to the solvency or circumstances of the customers of the bank, or probably of any other person. The legal presumption would be that his motive in making the communication was to guard the interest of the institution to which he belonged ; and it would be incumbent on the plaintiff, under such circumstances, to repel this presumption by proof of *express* malice. (2 Phil. Ev. 109, note a. Starkie on Slander, 228. 3 Johns. R. 180. 1 T. R. 110. Burr. 2425. Bull. N. P. 8.) But where the words are spoken in the street or market place, and there is nothing to shew that they were intended an a confidential communica-

tion from a bank director to his associate, the party uttering them can derive no protection or advantage from the circumstance that he is a bank director. Bank directors have no peculiar privilege to slander their neighbours.

The evidence of N. G. Carnes, that he heard the report that the Sewalls had failed, and that in consequence thereof his house took from the Sewalls business worth $1500 a year, was properly rejected. This evidence was offered for the purpose of showing the *special damage* sustained by the plaintiff from the words spoken by the defendant. There was no evidence that the report heard by the witness came from the defendant; it was not traced to him. The judge decided correctly, that the plaintiff could not recover for any special damage, unless he could trace the report which occasioned the damage to the defendant; that where the plaintiff claimed general damands only in consequence of a report started or repeated by the defendant, the jury might take into consideration the probable effect of such slander, and give damages accordingly; but where a specific injury is alleged, the report which occasioned it must be clearly traced to the defendant.

I am inclined to think the words were actionable in themselves being spoken of the plaintiffs as merchants. The witness inquired of the defendant, " If there were any failures yesterday; to which he replied, " Not that I know of, but I understand there is trouble with the Messrs. Sewalls." This answer in connection with the interrogation, was most obviously calculated to convey an injurious impression in relation to the mercantile standing and credit of the plaintiffs. The witness had heard of no failures, but he had heard that the Sewalls were in trouble. Every person would understand from this expression, when used in reply to such a question, that the Sewalls were embarrassed, were very hardly pressed and would probably fail, and such was the sense in which the witness understood them. Any words which in common acceptation imply a want of credit or responsibility, when spoken of a merchant, are actionable. (Starkie on Slander, 117, and cases there cited. 2 Phil. Ev. 100. 5 Johns. R. 476. 17 id. 218, and cases there cited.)

<div style="margin-left">UTICA,<br>
August, 1829.<br>
Utica Ins. Co.<br>
v.<br>
Cadwell.</div>

Whether they were spoken maliciously or not, was for the jury to determine. The plaintiff should not therefore have been nonsuited. The judge at nisi prius held the words not to be actionable, and as the plaintiff failed to prove his special damage, nonsuited him on that ground.

The nonsuit must be set aside and a new trial granted.