[ PHILADELPHIA, FEBRUARY 15TH, 1840. ]

## WAAGE *against* WEISER.

### IN ERROR.

In an action of slander, the declaration contained several counts, charging the defendant with speaking different defamatory words, &c., of and concerning the plaintiff. A rule of reference was entered by the plaintiff after filing the declaration, and before plea. The arbitrators made an award generally in favour of the plaintiff. The defendant did not appeal; but after the twenty days took a writ of error, and assigned for error, that the several counts did not set forth a sufficient cause of action, and that the judgment was bad; being on all the counts. *Held*, that the remedy was by appeal from the award to the Court of Common Pleas, and not by writ of error.

THIS case came before the Court by a writ of error to the Court of Common Pleas of the County of Montgomery.

On the return of the record, it appeared that Daniel Weiser brought an action on the case for slander against Frederick Waage.

The declaration contained ten counts for different words alleged to have been spoken by the defendant, of and concerning the plaintiff, who was averred to be a minister of the gospel.

After filing the declaration, and before the defendant pleaded, the plaintiff entered a rule of reference, under the act of the 16th of June, 1836. Arbitrators were duly appointed, who awarded in favour of the plaintiff, six cents damages, with full costs. From that award there was no appeal; and after the expiration of the twenty days, this writ of error was brought.

Eight exceptions were filed to the sufficiency of the declaration. The ninth exception was as follows:

" The declaration is bad and insufficient; as some of the counts do not set forth a sufficient cause of action; and the judgment is general on all the counts."

(Waagè *v.* Weiser.)

Mr. *Freedley,* for the plaintiff in error, cited 6 *Mod.* 202. 2 *Salk.* 696. 2 *Saund.* 301, n. 1 *Chitty's Pleading,* 381. *Kennedy* v. *Lowry,* (1 *Binn.* 397.) *Hook* v. *Hackney,* (16 *Serg. & Rawle,* 387.) *McClurg* v. *Ross,* (5 *Binn.* 219. 221.) *Gross* v. *Zorger,* (3 *Yeates,* 526.) *Ebersoll* v. *Krug and Wife,* (3 *Binn.* 528.) *Buck* v. *Nicholas,* (6 *Serg. & Rawle,* 316.) *Erdman* v. *Stahlnecker,* (12 *Serg. & Rawle,* 325.) *Bertsch* v. *Lehigh Coal, &c. Co.* (4 *Rawle,* 140.)

Mr. *Brooke,* for the defendant in error, cited *Miller's Executors* v. *Miller,* (5 *Binn.* 62.) *Commonwealth* v. *La Fitte,* (2 *Serg. & Rawle,* 106.) *Thompson* v. *White,* (4 *Serg. & Rawle,* 140.) *Scheetz* v. *Rudebaugh,* (2 *Rawle,* 140.) *Post* v. *Sweet,* (8 *Serg. & Rawle,* 391.) *Le Barron* v. *Harriott & Bennett,* (2 *Penn.* 154.) *Gram's Appeal,* (4 *Watts,* 43.) *Starkie on Slander,* 79, &c. *Carn* v. *Osgood,* (1 *Lev.* 280.) *Davis* v. *Davis,* (1 *Nott & M'Cord,* 290.) 13 *Mass.* 254. *Sewall* v. *Catlin,* (3 *Wend.* 291.) *Ostrom* v. *Calkins,* (5 *Wend.* 263.) *Marshall* v. *Addison,* (4 *Har. & M'Hen.* 537.) *M'Millan* v. *Birch,* (1 *Binn.* 178.)

The opinion of the Court was delivered by

HUSTON, J.—The defendant here was plaintiff below, and brought an action against Frederick Waagè, the defendant below, for slander.

The case contained ten counts, as set forth in the statement of this case; and after filing the declaration, the plaintiff, before any plea put in, entered a rule for arbitration. Arbitrators were chosen, who, after hearing the parties and witnesses, reported for the plaintiff six cents damages. There was no appeal by either party.

The defendant, however, not satisfied with what appeared to be very nearly an exculpation, has brought this writ of error—and assigns for errors, that the words laid in the first count are not actionable; so of the second count, &c. &c., going through the whole ten counts, except the third and seventh; and further, that there is error in this, that some of the counts do not set forth a sufficient cause of action, and the judgment is general on all the counts. When the counsel was proceeding to argue the sufficiency of the several counts, it was suggested by the Court that there was a preliminary matter, viz., whether the remedy was not by appeal, if either party was injured, and not by writ of error.

Owing to this, in some measure, the question whether the words charged in some of the counts are, or are not, actionable, when spoken of a clergyman, was not as fully argued as was, perhaps, intended by the counsel, and certainly not fully considered or decided on by this Court. The act of assembly requiring this Court to give an opinion on " every point and exception taken and signed in the inferior Court," don't apply to this case, in which no exception was

(Waagè v. Weiser.)

taken or signed in the Common Pleas; nor can it fairly apply to any exception or point, which this Court shall consider not arising really in the cause, and not necessary to be considered in deciding it in this Court, or in any future trial in the Court below, if the cause is sent back. In such cases it often happens that counsel, especially very learned counsel, say the point don't fairly arise in the case before the Court, and pass it over : it never could be the intention of the legislature to compel this Court to deliver an opinion on such point, especially where this Court has prevented a full argument, by saying that the cause must turn on some other matter. And more particularly, it can't apply to a case like this, where we have come to the conclusion, that this declaration is not regularly or legally before us.

There are words very provoking, as scoundrel, villain, and particularly liar, which have been held not actionable when applied to a common citizen. Whether the station, the duties and the usefulness in his congregation, of a clergyman, require such integrity, fairness, and truth in all his transactions, and such purity in his life and conversation, as to require that the law should throw a peculiar protection around him, and punish falsehood and malicious charges against him, which it would disregard as related to a layman, is a graver question, and this Court, if it comes directly before us, must decide it. The cases cited, were particularly a part of the opinion of C. J. Tilghman, in *M'Millen* v. *Birch*, and 13 *Mass.* 248 to 245 ; and 3 *Wendell*, 291.

I had supposed the question whether, in a case like this, the party dissatisfied would obtain redress in any other way than an appeal, was so settled as not to be again disputed : but there are people who will not believe any thing settled. In hopes that this case may put this matter again at rest, for a few years at least, I shall go into the matter, so far as to take a general view of it.

The first act introducing our system of settling causes in Court by submitting them to arbitrators, is as old as 1705. In 1806, some material alterations were made ; again in 1809 ; and on the 20th of March, 1810, the former acts, except that of 1705, were superseded by a general law on the subject, containing very special directions and provisions on almost every point which could occur under it. And this, with a few alterations, is still the law of the state.

By this law a plaintiff might enter a rule of reference at the same time he gave a precipe for his writ ; and the notice to refer and the writ were often served on the defendant at the same time ; and it was possible, and sometimes occurred, that the arbitrators were chosen, met, and reported, before the return day of the writ. No narr. or statement of the demand or cause of action was required, or in practice filed. Of course there was no plea or issue. Nothing can prove more fully than this does, that the arbitrators were intended to try and decide the case, untrammelled by the forms

(Waagè *v.* Weiser.)

of narr. plea and issue. It is true, that by the act of the 28th of March, 1820, it was provided, that no rule to arbitrate should be entered by the plaintiff, until the return-day of the writ, nor until declaration filed; but this was notoriously in order that the record should show, in case of another suit by the same plaintiff, what had been sued for and decided in the first suit; for the defendant might still enter his rule, and have a hearing and report, without pleading, or waiting for the plaintiff's declaring.

Passing over all the provisions as to the mode of proceeding and notices, I find the tenth section provides the mode of swearing them, and the form of the oath is given, "justly and equitably to try all matters in variance submitted to them,"—and then gives them power to administer oaths or affirmations to such persons called before them as they, or a majority of them, shall believe to be proper, disinterested and competent witnesses, as well as to judge of the credibility of their testimony, and the propriety of admitting in evidence any written document that may be produced; and to call on either party to produce any books, papers or documents that they shall deem material to the cause; and likewise to decide the law and the fact that may be involved in the cause to them submitted;" and then gives power to adjourn, &c.; and then to proceed to investigate, examine and decide the cause, suit or action to them submitted, and make out an award, signed by all or a majority of them, and transmit the same to the prothonotary within seven days after they have agreed on their report, who shall make an entry thereof on his docket; which from the time of such entry shall have the effect of a judgment against the party against whom it is made, and be a lien on his real estate, until such judgment be reversed on an appeal. It is apparent that the legislature never dreamed of a writ of error; and such was the opinion of every Court of Common Pleas in the state. But this Court would not give up, to any thing short of express words, its superintending power over all inferior jurisdictions. The eleventh section of the law gives the right of appeal within twenty days, when either party shall feel dissatisfied, or think him, her, or themselves aggrieved by the report of arbitrators, and in that and the following sections prescribes the mode of proceeding.

It always has been and will be a difficult matter to at once strike out a mode of practice under a law radically changing an extensive branch of the jurisdiction of a Court, and creating a new and distinct jurisdiction, in concurrence with or separate from the old. I shall not notice all the decisions on the point before us—but a few, which are much in point. In 5 *Binn.* 62, it was decided, that arbitrators could not nonsuit a plaintiff, even when he refused to appear and adduce testimony of any kind before them; but it is said they might report no cause of action. It seems to me nothing can be more conclusive that the Court thought the arbitrators had no power over the technical and legal forms of action. This case has never been

questioned, and I don't see any other ground on which it can be supported, than that the arbitrators have no other power than to try the case justly and equitably; it was decided solely on that ground. Now a court, on trial, might have stated that they would not receive evidence on a count clearly bad. The arbitrators were never intended to decide on the sufficiency of the pleadings, nor expected to be capable of doing so.

In *The Commonwealth* v. *Lafitte*, (2 *Serg. & Rawle*,) it was decided, that you could not reverse on writ of error, because the arbitrators refused to receive evidence which was legal and competent; and it was said, if the arbitrators mistake the law, the only remedy is by appeal.

In *Thompson* v. *White*, (4 *Serg. & Rawle*, 136, 141,) it is decided that the Court may inquire into the mode of entering the rule and notices in the different stages of the proceeding, to bring the case before arbitrators; but when the jurisdiction has attached, there is no remedy but by appeal, for what took place before the arbitrators, unless it appears on the record that they had no jurisdiction, or exceeded it. In *Post* v. *Sweet*, (8 *Serg. & Rawle*, 391,) a case in the Common Pleas, and two thousand dollars claimed, arbitrators awarded twenty dollars and costs. The Court of Common Pleas ordered execution for debt without costs. On a writ of error, this Court reversed the decision of the Common Pleas, and say that the Court have no power to alter an award, however illegal. The only remedy is by appeal.

In *Thompson* v. *White*, above cited, it is made a query, whether the Common Pleas, out of which the the rule of reference issued, have not all the power exercised by the Supreme Court. After considering the matter repeatedly at successive Courts, in *Sheets* v. *Rudebaugh*, (2 *Rawle*, 140,) this Court decided, that we would no more sustain a writ of error to an award of arbitrators: that the Court in which the case was pending was the proper tribunal to give redress in all cases of awards, where by law it could be given; and could and ought to exercise all the power which this Court had theretofore exercised; intimating that in some cases, as where the jurisdiction of the arbitrators or of the Common Pleas was denied, a writ of error would lie to such decision of the Common Pleas; but not directly to the award.

I may refer further to 2 *Penn. Rep.* 154 and 158, in which it was decided, that it was no cause of reversal, that a sum was found due by the plaintiff to the defendant, although the plea which authorises such finding was not put in. This, on the ground that the arbitrators had nothing to do with the pleadings; that by our law that plea might have been put in during the trial; and that whatever could be done by a Court and jury by the proper pleadings, could be done by arbitrators, without regard to the pleadings. In this case a judge

(Waagè *v.* Weiser.)

might have directed a jury to find on certain counts, and not on others. Whether referees have such power not, they are not expected to exercise it, and are not bound to exercise it.

The reasoning of the Ch. Justice in *Green's Appeal,* (4 *Watts,* 43,) is to the same effect, and full to the principle. There, in debt against two, the arbitrators found in favour of one defendant, and against the other—a report as much against established practice in Courts as this can be supposed to be. It came before this Court incidentally, and it was said that a writ of error was pending. The Chief Justice, however, went into a consideration of the matter, and we heard no more of the writ of error.

On the whole, we are of opinion, that if we, on reports of referees, went into an investigation of the pleadings, or required them to do so, we should contravene a manifest and plain, as if expressed, opinion—as well as overturn a long series of decisions formed deliberately; and this for no good or beneficial purpose, but to compel common farmers and mechanics to investigate technical and legal points of pleading, where neither education, nor law, nor reason have required it of them.

Judgment affirmed.