## John C. Taylor and others *v.* Sheldon P. Church. (*a*)

A publication unfavorably reviewing the credit and standing of a mercantile firm, and charging one member thereof with dishonesty, is libellous *per se;* and an action will lie by the partners for the injury to the business or credit of the firm.

A firm may recover for such a libel without proof of special damage.

*It seems,* that a judgment in favor of a firm for a libel, applicable both to the firm and to one of the individuals composing it, would not be a bar to a separate action by the individual member for injuries to his character.

Information respecting a firm doing business in a southern state, was communicated by the defendant to a person by whom he was employed for the purpose, and who was directly interested in ascertaining their credit. The information was then printed by the defendant, and furnished, in the course of his business, to merchants having no immediate interest in learning the standing of the said firm, but who were in the habit of selling goods to persons in the southern states, and wished the record for future reference. In an action by the firm for libel, *held,* that the acts of the defendant were not within the rule of privileged communications.

Where the publication of a libel is malicious, exemplary damages may be recovered. The right to exemplary damages, in such case, is the same when the action is prosecuted by a firm, as where the plaintiff is an individual.

---

(*a*) Note by Reporter.—The decision in this case has been reversed in the court of appeals, upon the single point first discussed in the opinion of Ingraham, First J. While concurring with this court at general term, that the rejected evidence should have been admitted, and deciding that it should have been received as part of the *res gestœ* given in evidence by the plaintiffs, and also as bearing upon the question of motive in publishing the libel; the appellate court held, as stated in the opinion of Jewett, Ch. J., that the court could not see that the exclusion, on its face and by legal necessity, could do no injury to the defendant. (See *Worrall* v. *Parmelee,* 1 Comst. 519.)

The court of appeals expressly affirmed the propositions contained in the first, second and fourth marginal notes. Upon the right of the plaintiffs to recover exemplary damages, there was no decision—five judges not concurring. Jewett, Ch. J., and Mason, J., wrote opinions; the former sustaining the court of common pleas upon that question, and the latter taking the opposite ground.

An erroneous exclusion of testimony is not ground for granting a new trial upon a bill of exceptions, where the court perceive that the error could have caused no injury to the objecting party.

THE defendant in this suit was the proprietor of what is now known as a commercial agency, and as such, conducted a business which is described in the opinion of the court. He was sued by the plaintiffs for injuries to the credit and standing of their firm from a libel contained in the following words:

"TAYLOR, HALE and MURDOCK, Columbus, Miss.

"This concern does not seem to thrive here. M. is capable in some respects, but is not a successful manager. He is remarkably systematic and particular in details, and a superior office clerk, but lacks the other and more essential requisites of a good merchant. H. is rather a negative character. Taylor resides in New-York, and sends out undesirable, ill assorted odds and ends, and unsaleable stock. He was formerly with Beri King, and I am told is an *unprincipled* character."

The complaint alleges that the plaintiffs were merchants, and copartners in trade, at Columbus, Miss., at the time of its publication; that the same was printed by the defendant, of and concerning their firm, and circulated by him to and among divers merchants of. and from whom the plaintiffs were in the habit of purchasing goods. The answer sets up that the defendant was engaged in ascertaining the credit and standing of merchants residing and doing business in the southern and southwestern states. That the publication was written by him at Columbus, while in the discharge of his said duties, and forwarded to a mercantile firm at New York, for the use of that firm and thirty six other subscribers; that the plaintiffs were unknown to him at the time, and it was information he received which he deemed reliable; that it was printed for the more convenient distribution among said subscribers, and was a privileged communication. The proof was, that the defendant sold and distributed it among others besides those subscribers. Other facts relating to the points decided are stated in the opinion. The jury rendered a verdict for the plaintiffs of $6,000

damages. An appeal was taken from the judgment to the general term of this court.

*Benj. F. Butler, John Cleaveland* and *George N. Titus*, for the defendant.

I. The publication complained of was not actionable without proof of special damage to the plaintiffs, and no such proof was given.

II. The plaintiffs having sued as partners, could only recover for injury done to their partnership business and credit, and there was no proof of any such damage. (*Haythorne* v. *Lawson*, 3 Carr. and P. 196.)

III. It was a privileged communication, and the plaintiffs, therefore, could only maintain the action on proof of express malice, and there was no proof that had any such tendency.

IV. The charge of the judge was erroneous, and the exceptions thereto were well taken, and the large amount of the verdict showed that the defendant had been prejudiced by it.

*C. Bainbridge Smith*, for the plaintiffs.

I. The alleged libel is actionable, *per se.* Any words spoken of a merchant which are calculated to impair his credit, or impute to him a want of integrity, are actionable without proof of special damage. And when spoken or written of a firm, an action will lie for the injury done to their joint business. (1 Starkie on Slander, Wend. ed. 138; Com. Dig. Action for Defamation, D. 25; *Sewall* v. *Catlin*, 3 Wend. R. 291; *Backus* v. *Richardson*, 5 Johns. R. 476; *Davis* v. *Davis*, 1 Nott and Mc. C. 290; Coll. on Part. § 668; *Cook* v. *Batchelor*, 3 B. and P. 150.)

II. Was the publication of the libel a *privileged communication ?* The defendant sets up in his answer that he forwarded from Columbus, Miss., a letter containing the libel in ques-

tion, addressed to a mercantile house in this city, which letter, he alleges, was for the use of that house, and thirty six other mercantile firms. 1. A voluntary communication from a party having no community of interest is not privileged. (Cooke's Law of Defamation, 37 ; vol. 37, Law Library ; *Getting* v. *Foss*, 3 Car. and P. 160 ; *King* v. *Watts*, 8 ib. 614 ; *White* v. *Nicholls*, 3 How. U. S. R. 266, 287–8.) 2. The defendant caused the libel to be printed. This was a publication ; and to the compositor and other workmen the privilege claimed did not extend. (*Baldwin* v. *Elphinston*, 2 Wm. Bl. R. 1037 ; 2 Saund. Pl. and Ev. 795.) 3. The protection of all confidential communications extends no further than the necessity of each particular case. (*Martin* v. *Strong*, 5 Ad. and El. 535 ; *Rex* v. *Creeney*, 1 M. and S. 273 ; *Rex* v. *Lord Abingdon*, 1 Esp. 226 ; *Stanley* v. *Webb*, 8 Leg. Ob. 209 ; *Stockdale* v. *Hansard*, 9 Ad. and El. 9.)

III. Malice is an implication of law from the libellous nature of the publication. (1 Starkie on Slander, Wend. ed. 213.) 1. The defendant's *belief* in the truth of what he had published does not destroy malice ; (*King* v. *Root*, 4 Wend. R. 113 ;) nor is it any excuse that he did not *know* the parties libelled ; *Dexter* v. *Spears*, 4 Mason R. 115 ;) nor can it be given in evidence that the defendant was *told* what he uttered. (*Inman* v. *Foster*, 8 Wend. R. 602.) 2. " The mere absence of malice in particular against the party whose reputation is destroyed, and the excuse that the real motive was not malice, but a desire of gain, is no better plea than that which might be used by a hired assassin." (1 Starkie on Slander, Wend. ed. 215.)

IV. The amount of damages, and matters not excepted to, cannot be reviewed on a bill of exceptions. (*Whiteside* v. *Jackson*, 1 Wend. R. 419 ; *Labron* v. *Woram*, 1 Hill R. 91.) And, in cases where exceptions have been taken to the ruling of a judge as to the admission of testimony, or to his charge, and he had erred in relation thereto, if it appears that the party could not have been prejudiced thereby, the judgment will not be reversed. (*People* v. *Shorter*, 3 Comst. R. 193 ; *Douglass* v. *McAllister*, 3 Cranch R. 298.)

Taylor v. Church.

By the Court. Ingraham, First J.—This action is brought to recover damages for an alleged libel contained in a printed paper which was circulated by defendant. The defendant was employed by certain merchants and mercantile firms to obtain and communicate intelligence in regard to the standing and responsibility of merchants and others doing business at the south and west, and after obtaining such information, he caused the same to be printed and distributed in loose sheets, and subsequently in a book, to such persons as become or were at the time subscribers to his agency. He was in fact the proprietor of an agency for giving information to such as were willing to pay for it, in regard to the character and standing of southern and western merchants. In the course of such publication, the article which is complained of as libellous was published concerning the plaintiffs.

The business is one of recent date, novel in its character, and the questions which have been presented to us on this argument are important, not only to the parties immediately concerned, but to the mercantile community. That such establishments, properly conducted, and giving only correct information, are of the highest importance to those who require such communications, no one can deny; but it is also evident, that if carelessly conducted, or if untrue reports are furnished, even through error or mistake, the consequence to those who are thus misrepresented may be very injurious, and sometimes destructive to their reputation, character and credit.

We have felt the importance of these considerations, both in regard to those who need the information, and also in reference to a continuance of such agencies, in the investigation of the questions before us.

In regard to the exceptions which are taken to some rulings as to the admission or rejection of evidence, it is proper to state, that on the argument of this bill of exceptions, they were all waived except the following: The person who printed for the defendant in 1847 was examined as a witness for the plaintiffs, and after proving the printing and publication of the libel in 1847, he was cross-examined by the defendant as to the mode

in which he was directed to do the work by the defendant at the time he employed him. This inquiry was excluded upon the trial, and an exception taken.

I am of the opinion that the question was a proper one, and that the defendant at the time was entitled to have it answered. The plaintiffs had proven by this witness that he was employed by Church to do this printing, and the defendant had a right to ask the whole of the conversation at the time of such employment, relating to that subject. There is no rule of evidence better understood than this, and doubtless it would not have been excluded at the trial, if it had been insisted upon on that ground. But it appears to have been urged upon the ground that the defendant had a right to show that he had the printing executed in as private a manner as possible, relying on the ground of defence subsequently raised by him, that the whole communication was a privileged one, for which he was not liable in this action. If the communication was privileged, it might be important to show the mode in which the copies were made, but if not privileged, it would be immaterial.

However secretly the sheets were printed, the wide circulation of them in printed sheets and books was a mode of publication which rendered secrecy in the printing of them immaterial. The mode in which the printing was done was not excluded, but only the directions of the defendant how he wished it done. Such directions would not have been admissible at all, except as part of the conversation called out by the plaintiffs. To show that the printer was directed to keep the sheets private from persons to whom the plaintiffs were unknown, would not tend to negative the charge of malice, which could be more fully inferred from the wide circulation among merchants and others, from whom the plaintiffs might want to purchase goods in the course of their business.

But after this exception was taken, other evidence was furnished of the publication of the libellous article, by the defendant's agent.

The libel thus proven, and which was the publication relied upon by the plaintiffs as the foundation of their action, was

printed in 1846, while the exception only related to printing executed in 1847. The error in excluding the question excepted to, could not, therefore, in reality injure the defendant, because the whole testimony was immaterial, and because the libel complained of was published at another time, and proved by other testimony. Where the court can see that no injury could arise by an erroneous exclusion of testimony, a new trial will not be granted for such an error on a bill of exceptions. (12 Wend. 41 ; 4 Wend. 458.)

When the plaintiffs rested their case, the defendant's counsel moved to dismiss the complaint, on the ground that the plaintiffs had not made out a cause of action. 1. Because the publication was not *per se* actionable, and no special damage was proven. 2. Because as partners, they can only recover damages for injury done to their partnership business and credit, and there was no proof of such damage ; and 3d. That the publication was a privileged one, and there was no proof of express malice. This motion was denied by the court.

Whatever may have been the law in England during the last century as to the right of partners to sue for damages in an action for libel, there can be no doubt that in this state, at the present time, such an action may be maintained.

The cases cited on the argument show that in England such actions are maintainable ; (3 B. & P. 150 ; 2 Saunders, 116, n. 2 ; Cro. Car. 513 ; 4 Barn. & Creswell, 247 ; 3 Bingham, 456 ;) and in this country they have frequently been sustained. (3 Wend. 291 ; Coll. on Part. § 668 ; 17 Mass. 185.)

It is equally true, that in such actions the firm can only recover for injury done to the business or credit of the firm, and not for any matter relating solely to any one of the members of the firm, and that such recovery may be upon proof of the libel merely, if actionable *per se*, and if not, then only upon proof of damage. These principles I do not understand either counsel as denying on the argument, but the defendant contended that the words were not, *per se*, actionable, and that the communication was privileged. The whole statement must, in the decision of this question, be taken together. It was written in

regard to the firm. It purported to give information in regard to the responsibility and standing of the firm. Although it may be true that to separate the libel into different parts, and take each sentence by itself when it applies to an individual member of the firm, there would be no libellous matter for which such individual member could sustain an action without proof of special damage; yet if the whole taken together was written in reference to the firm, and purported to give a description of the firm's business as well as of the different members of the firm, and affected their character for honesty as merchants, or was calculated to impair their credit, it would be actionable, although no special damage was proven. I am at a loss to see why, in such a publication, a charge of dishonesty against one member of a firm, in a review of the firm and of the different members of the firm, is not calculated to injure the business and credit of the firm. Suppose such a charge made in an article relating to the firm, against the members of the firm separately, can it be doubted for a moment that the effect would tend materially to injure the character and credit of the firm? and if so, when all were charged with dishonesty, the like effect would be produced, although, perhaps, not to so great an extent, if two members, or even one member of the firm were so charged.

Here it is not one member of the firm only, that is so charged, but the alleged libellous matter is headed with the name of the firm, and it is apparent, from the whole publication, that its object was to give information by which the extent of credit to be given to the firm was to be determined.

I concede that the action cannot be maintained except for injury to the firm, and that the individual members are not to be compensated in this action for injury they may have separately sustained. Nor can this action be maintained for libellous matter affecting Taylor alone, unless it can be so connected with the interest of the firm as to show that it related to the firm as well as to the individual solely.

But admitting all this, still I have no doubt that the article complained of, in all its parts, applied to and injuri-

ously affected the interests of the firm, and was intended for that purpose.

The authorities cited on behalf of the plaintiffs sustain this position, that the words are to be taken in their natural sense, and when so understood, if they affected the plaintiffs' character and standing as merchants, they were actionable *per se.* (7 Cow. 654; 3 Wend. 291; 3 Wend. 263.) So in this case, if the words taken in their natural sense impute to the firm, either in the whole or component parts of the firm, anything injurious to their business and standing as a mercantile firm, they are actionable.

The case cited to the contrary from Cheves' S. C. Law and Equity Rep. p. 17, does not conflict with this view. That case merely decides, that charging an individual with having failed was actionable, if he was a member of a mercantile firm, and that he might recover in his own name. The point in that case is, that the mercantile character of the plaintiff, as connected with a firm, was sufficient to enable him to maintain the action for words which were only actionable when spoken of a merchant. That case does not, however, decide that the firm could not have maintained an action for the same cause.

It was said, upon the argument, that the verdict and judgment in this case could not be set up as a bar to an action brought by Taylor alone. This is true, and it ought not to be a bar.

In a case of assault and battery upon a married woman, the husband and wife may sue for the injury to the wife. The husband may sue alone for the loss of service of the wife. So in slander on the husband and wife, a joint action for the injury to the wife's character, and a separate action for the husband, may be maintained.

In these cases of tort, two or more actions may be brought upon one and the same transaction. There is no reason why the same rule applied to a firm should not allow an action for damages done to the firm, and an action for injuries to the character of any member of a firm, where the slander

or libel was applicable to the firm and to the individual members.

The next inquiry is, was this libel a privileged communication? If it was, then it must be conceded that there is no ground upon which the verdict can be upheld. No special damage is shown, nor is any express malice proven. The subsequent report in 1847 could not be considered as furnishing such evidence. That publication would be equally privileged with the first, and express malice is not to be inferred from a second publication of privileged matters, without some stronger evidence than the mere republication.

If this publication had been in answer to an inquiry from a merchant having an interest in knowing the condition of this firm, and had extended no farther than the form or answer to the application, it might be included within the protection of privileged communications. (3 How. 266; 5 A. & E. 535.)

It is not, however, necessary to the decision of this case that we should now decide whether, if the communication had been confined to the person making the inquiry, it would have been privileged. The publication was far more extended in this case.

The defendant's answer shows, that different merchants wanted inquiries made as to different firms and individuals, who were debtors to one or more of such firms, and that the communications in question were originally furnished to Wolf & Gillespie, who had an interest in knowing the condition of the plaintiffs' firm. It also appears that a number of other firms employed the defendant as their confidential agent in similar business in regard to others. The publication was not confined to the paper sent to Wolf & Gillespie.

The evidence shows that it was afterwards printed, and copies to the number of fifty or seventy-five were printed and distributed, first in sheets, and afterwards in bound volumes. There is some confusion in the evidence as to the acts of the defendant and those of his brother, in some of the subsequent publications, but there can be no doubt, from the testimony, that the libel was originally printed by or under the direction of

Taylor v. Church.

the defendant, and after it was so printed, was distributed by him to persons who had no special interest in knowing the condition of plaintiff's firm. The question, then, on this part of the case is, whether a communication made for the purpose which brings it within the class of those which are privileged, may be subsequently printed and circulated to other persons, who, at the time of the publication, have no interest in knowing the facts stated, and who purchase the work for the purpose of reference at a future period, if they should thereafter have occasion so to do.

The benefit of this exception, on account of privilege from the ordinary rule, has never been extended so far, nor do I know of any case that warrants such a doctrine.

The defendant's counsel, with all the research he has devoted to this subject, has not referred us to a case where such an extension of the rule has ever been suggested. The case cited from 5 Car. & P. 543, puts the privilege expressly upon the ground that the defendant was desired to make the communication upon matters in which the person to whom he wrote had an interest, or to whom the defendant was bound as a matter of duty to make the communication. So the case in 1 Campbell's N. P. 267, was one in which the defendant himself was interested. No case that has been cited protects a communication made for the mere purpose of profit, and to persons at the time having no interest in knowing. Nor can such a rule be maintained upon principle. The only ground of privileged communications is interest, either in the party giving or receiving the information, but it is not to be found in a case where no such interest exists at the time the communication was made. Any extension of the rule would be fraught with danger to that class of business men to whom credit is of any value.

Communications inserted in this publication and circulated secretly, would produce ruinous effects upon the standing and credit of those referred to, while they themselves were in utter ignorance of the existence of such reports, and unable, therefore, to guard against the effect of them. Such a rule would

sanction an unlimited publication, the evil consequence of which can hardly be imagined.

There are also other reasons why this publication cannot come within the rule of privileged communications. We must look at all the circumstances attending the publication. We find the defendant, for the purposes of, and as a source of profit, undertaking to procure information in regard to merchants and firms residing abroad, describing their character, business, and the degree of credit they are respectively entitled to, printing this information in a book, and selling the same from time to time, to any persons who desire to become subscribers. There is no rule of law that will permit the court to hold such a publication to be privileged. The necessary ingredient to make a communication privileged, viz., present interest in the matter of the communication, is wanting. The publication furnished no knowledge which the defendant had. He published reports obtained from others, whether true or false he knew not, (and in this case we must consider the report false, because there was not the least proof of the truth of it,) and he furnished them indiscriminately to any who became subscribers, whether interested or not. That such publications may be of great use to that portion of the mercantile community who sell largely on credit to persons with whose circumstances they are unacquainted, is undoubtedly true, if the statements therein are correct; but it is equally true they are fraught with danger to those who, by false reports, are involved in loss of credit and perhaps insolvency.

As no one can guard against the effect of such secret publications, the least that can be required in regard to them is, to hold the party who, as a matter of profit, prints and publishes them, to the obligation of seeing that what he thus privately circulates is founded in truth. The convenience and protection of those who give credit is not to be considered as paramount to the credit and solvency of those who are the subjects of these reports. The rule which we would adopt in these cases is this: while any one who has an interest in giving or receiving the information has a right to claim that the same is

a privileged communication, if made without malice, yet, when the publication is extended beyond the parties directly interested, its privileged character is at an end, and the man or firm whose credit is injured by such publication, has a right to ask from the publisher full indemnity for the injuries sustained.

The charge of the judge upon the trial was objected to by the defendant. He charged, that although the defendant may have had the right to make the communication, still, " if he voluntarily placed himself in a position in which, for convenience, a multiplication of copies became desirable, he was bound to make such copies in such a manner that third persons having nothing to do with, and no interest in the subject, should not be thereby informed, otherwise the defendant is liable."

There can be no difference, as suggested on the argument, between making the communication in writing or printing. It may well be doubted whether either mode is justifiable if a third person is employed to do the work. If such a communication can be privileged, it must be made in a private manner; and if the defendant was justified in making it, he should have furnished the information himself, and not have committed the duty to others. It is not necessary, however, to decide this point. The view I have taken of the question whether the communication was privileged, renders it immaterial whether the copies were written or printed. The other points upon which the judge refused to charge, and which were excepted to, involved the same questions as those I have above discussed, and upon which my conclusions are—1st. That there was no impropriety in instructing the jury that the communication was not privileged. 2d. The fact that the persons who subscribed to the defendant's reports were interested in obtaining *information* as to the standing of the country merchants generally, would not bring such a publication within the rule of privileged communications; and 3d. The printing and publication of such printed copies were not justified under the evidence in this case, because the persons to whom they were

delivered had no such interest in the communication as to make the same privileged.

There was no error in refusing to charge, upon these points upon the trial, as requested by the defendant's counsel.

The remaining exception is as to the rule of damages.

The judge charged the jury that the damages should be a full compensation for the injury, and nothing more, unless the jury were satisfied that the defendant was influenced by actual malice or a deliberate intention to injure the plaintiffs; but if they were satisfied of such intent, they might give " such further damages as are suited to the aggravated character which the act assumes, and as are necessary as an example to deter from the doing of such injuries."

In actions of this character, where the jury find the publications to be malicious, it has always been conceded that vindictive damages might be given.

The only difference between the ordinary case of a libel and the present is, that the action is brought on behalf of the firm. The judge in his charge limited the recovery to actual injury, unless the jury found the defendant to be influenced by actual malice, and there can be no reason why the instruction as to further damages should be withheld in a case of an action by a firm, any more than of an individual. (Cheves' L. & E. Rep. pp. 17–21.) The reasons for giving vindictive damages are twofold, one to punish the defendant, and the other to deter from a repetition of the offence. (7 Hill, 217; 6 Hill, 266; Sedgk. 339; 2 Sand. S. C. 269.) Both reasons are applicable in this case as any other, and although we may think differently from the jury upon the finding as to actual malice, still there was no error of law on this point, which was available to the defendant.

The amount of damages awarded is large. It is not, however, objected to as excessive, and we do not feel at liberty to say, even that the jury have gone beyond what they considered to be an indemnity for the injury sustained. Even if they have, we think there was no error in the instruction which allowed them to do so. The cases cited by the defendant's counsel do

Taylor v. Church.

not conflict with this rule. Those were cases in which the action was brought by a parent or guardian for injury to a child, and the only grounds on which such actions can be maintained are the supposed loss of service and actual expense in taking care of the injured person. There is no propriety, therefore, in such cases, in allowing vindictive damages. (24 Wend. 430; 4 Denio, 461; 2 Greenleaf Ev. 209.) Nor is there any analogy between this case and that of one where a criminal prosecution is instituted for the same offence, and the court will instruct the jury to take into consideration the fine in the criminal case, in fixing the amount of the plaintiff's damages.

It is true that the firm, and the individual members of the firm, may maintain their action for the same cause, and in each case vindictive damages may be recovered, but it is not for the same injury. I am not prepared to say that in the suit in behalf of one member of the firm, the defendant might not show the recovery in behalf of the firm, in mitigation of a claim for such damages. But conceding that it might be used for such purpose, it could not be used as a bar in the second suit to such damages, and this is the only view in which it is material to the present case.

There are some late decisions where the propriety of allowing exemplary damages in cases of tort is doubted. Some of these cases were cited on the argument. (4 Denio, 462; 2 N. H. R. p. 135.) The contrary rule has, however, prevailed in this state at all times, and has been too long sanctioned by all the courts, to permit us now to atttempt a change upon such a suggestion. (3 Hill, 180; 14 J. R. 352; 3 J. R. 56.)

         The judgment must be affirmed.