ALBANY,
Oct. 1827.

Mott *against* Comstock.

Mott
v.
Comstock.

MOTION in arrest of judgment, founded on the insufficiency of the 5th count in the declaration. This was in slander. The first count recited, that before, and at the time of publishing the slander, the plaintiff was and had been a merchant, and sought his livelihood by buying and selling goods, wares and merchandize, as others of that trade and business usually do; that he was in good credit, &c., and averred that the defendant, knowing the premises, in a conversation with divers good and worthy citizens, of and concerning the plaintiff, and of and concerning his business as such merchant or trader, and of and concerning the state of his circumstances as such merchant or trader, spoke certain slanderous words.

The 5th count was as follows : "and whereas, &c., in a certain other discourse which he, the defendant, then and there had, with divers other good and worthy citizens of this state, of and concerning the said plaintiff, and of and concerning his business, and of and concerning his circumstances as such trader or merchant as aforesaid, he, the said defendant, falsely and maliciously said, spoke and published *in the presence and hearing of those last mentioned citizens, of and concerning the plaintiff as such trader or merchant as aforesaid, and of and concerning his business, and of and concerning the state of his circumstances, and of and concerning a certain sum of money which was then due and owing from the said plaintiff to one Matthew Harris, these other false, scandalous, malicious and defamatory words following, that is to say : "There is poor Harris," (the said Matthew Harris meaning,) "it is hard for him," (again meaning the said Matthew Harris,) "to lose his," (meaning the said Matthew Harris',) "debt;" (meaning and thereby, that the said plaintiff was insolvent; and unable

The 5th count of a declaration in slander averred that the plaintiff, who was a merchant, speaking of him as a merchant, and of and concerning his state and circumstances, and a sum of money which he owed one H. "There is poor H.; it is hard for him to lose his debt;" *innuendo,* that the plaintiff was insolvent, and unable to pay the debt; and that H. would lose the debt in consequence of the plaintiff's insolvency. [*655] The verdict being general for the plaintiff, on this, among other counts admitted to be good, on motion in arrest, *held* that the *innuendo* was warranted by the words, connected with the colloquium and circumstances disclosed; and the jury having found in favor of the *innuendo*, such findig was conclusive.

To say of a merchant, that a debt will be lost because he is unable to pay it, is actionable.

ALBANY,
Oct. 1827.

Mott
v.
Comstock.

to pay the debt he owed to the said Matthew Harris; and that the said Matthew Harris would lose the said debt in consequence of the said plaintiff's insolvency.)

A general verdict having been rendered for the plaintiff, on this and the other counts confessedly good,

*Talcott,* (attorney general,) for the defendant, moved in arrest of judgment. He said the 5th count contained no actionable words; nor did it set forth any cause of action. If this be so, it is not to be disputed that the judgment must be arrested, though the other counts be good. (5 Cowen, 503. 11 John. 98.) The count is bad; for the innuendo undertakes to enlarge the meaning of the words. It adds insolvency: thus extending them beyond what they can be construed to signify, either taken by themselves, or in connection with the colloquium. (7 John. 271.) Such a defect is fatal in arrest of judgment. (4 Rep. 17 *b.* 8 East, 427.) The insolvency of the plaintiff was not mentioned in the words; nor is there any *colloquium* as to insolvency. For aught that appears, aside from the innuendo, the intent might have been to put the loss on infancy, or the statute of limitations.

*A. L. Jordan,* contra. To say of a merchant or trader, he is unable to pay his debts, is actionable. The law is tender of the reputation of a man in business; and will punish not only palpable charges, but the most remote insinuation *of insolvency. (Stark. on Slander, 108, 116, 118. 3 Salk. 326. 1 Bin. 184.)

[*656]

The rule now adopted in relation to slanderous words, is, that they are to be understood by the court and jury in the sense the author intended to convey, as evinced by the circumstances of the case. (5 East, 463. 3 Bin. 515. 7 Serg. & Rawle, 449. 3 Cowen, 281.) It is for the jury to say whether they were spoken maliciously. (9 East, 92. 6 Cowen, 76. 13 Mass. Rep. 248.) On a motion in arrest, the question is, whether the words either alone, or taken in connection with circumstances stated on the record, are capable of the meaning imputed to them. If they may be

slanderous, then that they are so, is established by the verdict. They may have a local meaning; (Stark. on Slander, 117; 2 B. & P. 284; 10 Mod. 111;) or derive a meaning from extrinsic circumstances, even the reverse of their ordinary import. (Stark. on Slander, 64. Freem. 279.) Insinuation, or indirect allusion, is enough. (4 Esp. Rep. 191. 2 Stark. Rep. 297. 1 M'Cord, 203. 1 Nott & M'Cord, 290. 5 East, 463. 3 Bin. 515. 1 Wash. 150.)

Here the words of the 5th count, with the collateral facts placed on the record by the prefatory allegations or averments, are capable of the meaning imputed to them. The prefatory allegations are, that the plaintiff was a merchant doing business, in good credit, which the defendant knew. The colloquium or conversation, is said to have been of the plaintiff as merchant, and of the state of his circumstances, and the debt he owed Harris. The words plainly import that Harris was to lose his debt. How? It must have been because the plaintiff was a rogue, or insolvent, or would plead the statute of limitations or usury, or some other means. The innuendo explains the doubt; that the words meant insolvency; and the jury have found the explanation true. If the meaning was otherwise, it should have been shown to the jury, who would have found for the defendant. (Stark. on Slander, 50, 55. 6 John 83. 7 John. 359.) The words being capable of the meaning imputed to them by the pleader, the verdict of the jury, *giving them that meaning, is conclusive. Words may signify matter of fact or of law. Whether they impute inability to pay debts, is matter of fact; whether they impute crime, matter of law. The former is for the jury; the latter for the court, on looking at the record. The former may or may not be actionable, as the jury shall find. Here the collateral matter, that he is a merchant, is averred, to give point and application to the words. The office of an innuendo is to explain what words, otherwise doubtful, mean. It did so; and it was for the jury to say whether the explanation was properly given. 3 Bin. 517; 2 id. 34. Cowp. 275, 679; 2 Bl. Rep. 959; 7 John. 359; Cro.Eliz. 250.

*Talcott*, in reply. True, where the words are suscepti-

ALBANY,
Oct. 1827.

Mott
v.
Comstock.

[*657]

ble of different meanings, the innuendo may explain them ; and the verdict of the jury shall conclude. But the rule applies to those cases only where the words are ambiguous. They are not so in this case ; and the jury having found the innuendo true, will not avail the party. The court must, in all cases, see that words will warrant the finding. If they find the innuendo too large, they will arrest the judgment notwithstanding the finding of the jury. (6 T. R. 694.) The defect in the words themselves must be supplied by a *colloquium ;* which should have been not only of and concerning the plaintiff as merchant ; but of and concerning his insolvency. There is no colloquium as to the latter. The state of his circumstances and business may have been of his better or solvent circumstances, or the contrary. Which of these is not explained by the coloquium, whose office it is to furnish premises for the innuendo.

*Curia, per* SAVAGE, Ch. J. The count in question avers that the words, " There is poor Harris ; it is hard for him to lose his debt," were spoken in a conversation concerning the plaintiff as a merchant, and of his business and the state of his circumstances, and of a sum of money due by him to Harris ; innuendo, that the plaintiff was insolvent, *and unable to pay the debt, and that Harris would lose it in consequence of the plaintiff's insolvency.[1] After ver-

[*658]

[1] An innuendo is frequently necessary, where the language of the defendant is apparently innocent and inoffensive, but where, nevertheless, by virtue of its connection with known collateral circumstances, it conveys a latent and injurious imputation.

Where, from the ambiguity of the defendant's expressions, it is doubtful who was meant, it is the proper office of the innuendo to render the allusion clear, by specifically pointing out the meaning. As where but one or two letters of the name are expressed, or the plaintiff is libelled under a fictitious or borrowed name, or where the libel is couched under a fable or allegory, whose tendency and meaning it is necessary to explain by reference. Thus, in the case of *Sir Miles Fleetwood* v. *Curl,* (Cro. J., 557 ; 2 Roll. Rep. 148,) the plaintiff was receiver of the court of wards, and the words were laid in the declaration, with an innuendo, as follows: "Mr. Deceiver (meaning the plaintiff) hath deceived the king." It was assigned for error, that the innuendo could not be supported, but the court held that it was well applied.

dict, we must intend that the words were spoken with the meaning imputed by the innuendo, which, we think, is the

So, in an information against Clerk, (Barnard K. B. 304; Dig. L. L., 24;) for publishing a libel in "Mist's Journal," it was shown by proper averments and innuendos, that in a pretended piece of Persian history, the king and several other members of the royal family had been libelled, and that the king was represented under that of the name of Merewits, the Queen under that of Súltana, and that the character of the young Sophia was intended for the pretender.

In *Baxter's case*, (3 Mod. 69,) it was shown that by the word "bishops," the Bishops of England, (3 Bac. Ab. 454,) were meant; in the *King* v. *Franklin*, that by "ministers," were meant the ministers of the King of England. (11 Mod. 99.)

In an action for charging the plaintiff with having said that he could see no probability of the war's ending with France until the little gentleman on the other side of the water (innuendo the Prince of Wales) was restored to his rights, the court held, that this was certain enough, even without an innuendo.

In *Tutchin's case*, (5 St. T. 590; 3 Ann. 1704,) the introductory part of the information stated, that the libel was written concerning the royal navy of this kingdom, and the government of the said navy. One part of the libel was, "the mismanagement of the navy (innuendo the royal navy of this kingdom) have been a greater tax upon the merchants than the duties raised by parliament." And it was held, that "the navy" was well connected, by means of the innuendo, with the royal navy mentioned in the introductory part.

In the *King* v. *Mathews*, (9 St. T. R. 682,) the information in the introductory part charged the libel to have been written "of and concerning the pretender, and concerning his right to the crown of Great Britain."

The words of the libel were, "from the solemnity of the Chevalier's birth, and if hereditary right be any recommendation, he has that to plead in his favor." And it was held, that the innuendos in the body of the libel, explaining the words to mean the pretender, and his hereditary right to the crown of Great Britain, were, when connected with the previous averments, sufficient to verify the charge.

The most important rule of law relating to this species of averment is, that its office is merely to explain by pointing out the defendant's allusion, and that it can in no case be allowed to introduce new matter. And the reason for this is a most substantial one; for were it otherwise, there would be no sufficient and distinct averment of the existence of those facts which in point of law are essential to render the words actionable. For instance, suppose the defendant had said, "you are forsworn," which words would not be actionable, unless spoken (*Holt* v. *Scholefield*, 6 T. R. 691,) with reference to a judicial oath, if the plaintiff averred by way of innuendo, and without reference to antecedent matter, meaning thereby "that he, the said plaintiff, was forsworn in a court of record," or meaning thereby "that he, the said plaintiff, was perjured;" the averment would involve a question of law, and

only meaning that could naturally be given by the pleader, upon the circumstances and colloquium disclosed. The charge was equivalent to saying, Harris will lose his debt, because the plaintiff is unable to pay it. Such words said of a merchant are actionable.[2]    The motion in arrest is not well founded.

Motion denied.

the jury would have to decide upon evidence, whether the forswearing did in law amount to perjury, and the question would not be open to the court upon the record; and besides this, that clearness and precision would be wanting which is essential to a legal and technical statement of the case.

In the *King* v. *Horne*, (2 Cowp. 683,) De Grey, C. J., observed, "in the case of a libel, which does not in itself contain the crime without some extrinsic aid, it is necessary that it should be put upon the record by way of introduction, if it is new matter; or by way of innuendo, if it is only matter of explanation. For an innuendo means no more than the words '*id est*,' *scilicet*,' or 'meaning,' or 'aforesaid,' as explanatory of a subject matter sufficiently expressed before; as such a one, meaning the defendant; or such a subject, meaning the subject in question."

An innuendo, therefore, cannot extend the sense of the words beyond their own meaning, unless something be put upon the record for it to explain. (Recognized in *Van Vechten* v. *Hopkins*, 5 Johns. R. 220; *McClaaghry* v. *Wetmore*, 6 Id. 83; and *Thomas* v. *Croswell*, 7 Id. 271.)

As, in an action upon the case against a man, for saying of another, (*Barham's case*, 4 Co. 20,) "he has burnt my barn;" the plaintiff cannot there say, "innuendo a barn with corn," because that is not an explanation of what was said before, but an addition to it.

But if, in the introduction, it had been averred that the defendant had a barn full of corn, and that in a discourse about that barn, the defendant had spoken the words charged in the declaration of the plaintiff, an innuendo of its being the barn full of corn would have been good; for, by coupling the innuendo in the libel with the introductory averment, "his barn full of corn," it would have made the sense complete.

An innuendo can in no case supply the want of a proper colloquium.    1 Starkie on Slander, p. 372, *et seq*.

[2] To maintain an action for words spoken, on the ground that they were injurious to the plaintiff in his business or occupation, the words must relate to his business character, and must impute to him misconduct in that character.    *Ireland* v. *McGarvish*, 1 Sandf. 155.

Where the words are spoken, not of the trader or manufacturer, but of the quality of the articles made or dealt in, to render them actionable, *per se*, they must import that the plaintiff is guilty of deceit or mal-practice in the making or vending, or of a want of skill in the manufacturing of the articles. *Tobias* v. *Harland*, 4 Wen. 537.

A defendant who couches his slander in ambiguous terms, in the hope of

blasting the reputation of his neighbor without incurring legal responsibility, is not entitled to an indulgent construction of his words, either from the court or the jury. *Gibson* v. *Williams*, 4 Wen. 320.

Where, in answer to an inquiry, "were there any failures yesterday?" it was said, "not that I know of, but I understand that there is trouble with the Messrs. S. :" it was held that such words, being spoken of the plaintiffs as merchants, were actionable in themselves. *Sewall* v. *Catlin*, 3 Wen. 291.

Any words which in common acceptation imply a want of credit or responsibility, when spoken of a merchant, are actionable. Ib.

A bank director is not justified in making a communication to a co-director in the public streets, affecting the credit or responsibility of a merchant, where there is no evidence of such communication being confidential. At a meeting of the board of directors, he would be justified in communicating to his associates any report which he may have heard in relation to the solvency or circumstances of customers of the bank, or probably of any other person; his motive in such case would be presumed to be innocent, which presumption could only be repelled by proof of express malice. Ib.

Where words are actionable only on account of the official or professional character of the plaintiff, it is not enough that they tend to injure him in his office or calling, but they must relate to his official or business character, and impute misconduct to him in that character. *Van Tassel* v. *Capron*, 1 Denio, 250.

To say of a blacksmith, in relation to his business and trade, "he keeps false books, and I can prove it," is actionable. *Burtch* v. *Nickerson*, 17 Wen. J. R. 217.

It seems that to say of a merchant, "you keep false books, and I can prove it," is actionable. *Backus* v. *Richardson*, 5 J. R. 476.

The words "he will be a bankrupt in six months," are actionable *per se*. *Else* v. *Ferris*, A. N. P. 23. (N. Y. Dig., vol. 4, tit. *Slander*, p. 1129, *et seq*.)