## SUPREME COURT.

The Shoe & Leather Bank agt. John Thompson.

*Incorporated companies* established for the purpose of transacting any business may maintain actions of *libel*, the same as individuals, affecting its business or property.

Therefore, where the defendant published in his widely circulated Bank Note and Commercial Reporter of and concerning the plaintiffs, a banking corporation, as follows: " We would observe to those interested, that we see no reason why the Shoe & Leather Bank may not at any time be closed up by an injunction"—"After promising to quote the Merchants' Bank at Trenton, I was informed that legal proceedings against the Shoe & Leather Bank were already under advisement,"

*Held,* on demurrer, that these words were actionable *per se,* and that the plaintiffs could maintain the action of libel thereon without alleging special damage.

*New York Special Term, July,* 1862.
Demurrer to complaint, in an action of libel.

Robert W. Andrews and O. R. Steele, *for plaintiffs.*
Hill, Courtney & Monell, *for defendant.*

Clerke, Justice.   Words which are calculated to impair the credit or in any way to affect the standing of a person in relation to his trade or business, are actionable *per se,* precisely like words importing a charge of having been guilty of a crime or of having a contagious distemper.   Thus, to say falsely of a merchant that a debt will be lost because he is unable to pay it, is *per se* actionable. (*Mott* agt. *Comstock,* 7 *Cow.,* 654.)   On being asked,

Shoe & Leather Bank agt. Thompson.

were there any failures yesterday, the defendant answered, " Not that I know of, but I understand that there is trouble with the Messrs. S.," who were merchants ; held, that the words being spoken of the plaintiffs as merchants, were actionable. ( *Sewell* agt. *Catlin*, 3 *Wend.*, 291.)

The cases which I could quote are legion. The defendant is the publisher of Thompson's Bank Note and Commercial Reporter, a paper having a large circulation among the inhabitants of the city and state of New York and other cities and states of the United States. He is charged in the complaint with having published in this paper several items manifestly calculated to affect the plaintiffs' credit as a banking institution. Among other items of intelligence contained in it are the following : " We would observe to those interested, that we see no reason why the Shoe & Leather Bank may not at any time be closed up by an injunction." " After promising to quote the Merchants' Bank at Trenton, I was informed that legal proceedings against the Shoe & Leather Bank were already under advisement."

These words being clearly calculated to impair the credit and affect the standing of any banking concern, would, beyond all question, be actionable *per se*, if spoken or written of an individual, without the necessity of proving special damage ; in other words, would be actionable *per se*, if they were published in relation to any financial establishment not incorporated. If they were intended to apply to any individual banker in Wall street, he would have a clear remedy for damages, without any allegation of special damage. The question, then, in the present case is, whether this remedy is not equally available in favor of a banking institution which is incorporated.

It is remarked by the defendant's counsel, in his brief in support of the demurrer to the complaint, that he could find no precedent in favor of the plaintiffs' claim ; and in the report of a case in New Jersey, involving the same

question, it is affirmed that the court could find no precedent, and that the oracle was dumb.

I have not myself been able to find any reported case of an action commenced by a corporation aggregate for the publication of words affecting its credit, although the temporary illness, under which I now labor, prevents me from making that thorough search which the importance of the subject requires.

But, happily, our system of jurisprudence does not render it necessary that a case precisely similar should be found in the books, to authorize courts of justice to arrive at legal conclusions.

It would be at variance with the spirit and nature of that system to hesitate for the want of a precise precedent, when we are able to have recourse to its general principles; "these are not dumb."

And no principle is more generally recognized, and more capable of practical application, than that there is no wrong without a remedy.

Have not incorporated institutions, established for the purpose of transacting any business, as complete a right to legal protection as any individual against any wrong affecting their success?

The law makes no distinctions which have not some foundation in reason or necessity; at least this is the dictate of the source from which our law is derived; although, in some technical points, distinctions without a difference may have been sanctioned. But the present period does not favor distinctions of this character. An incorporated institution, if entitled to any protection, is entitled to protection for its business and property.

It is recognized by the law as being engaged in business, and as being possessed of property. This recognition, as to its rights in these respects, is as effectual and complete as in the case of private individuals. And it would be very illogical to suppose, because corporations have more limited

rights than individuals in other respects, that, with regard to the rights which they do possess, they have not the same remedies as individuals.

And I repeat, that the law has conferred on busines corporations, as well as on individual bankers or merchants, the right of protection against all aggression affecting its business or property.

I therefore think that the plaintiffs have a right to maintain this action without setting out any specific damage.

The other objections raised by the demurrer are equally untenable.

The demurrer must be overruled with costs, with leave to the defendant to answer in twenty days.