Freedman, J.
This action is brought by the plaintiff, against the defendant, for the recovery of one hundred and thirty thousand dollars damages, alleged to have been sustained by reason of divers alleged libelous publications of and concerning the plaintiff, contained in a pamphlet entitled Life Insurance Chart, annually published by the defendant, and embodying a brief synopsis of the annual returns of life insurance companies, and also in three advertisements inserted -in different public journals published in the city of Hew York, and inserted by the defendant, with the view of calling the attention of the public to said Life Insurance Chart, and containing substantially the same statements concerning the plaintiff’s company claimed by them as libelous in the chart.
■ Upon the complaint in this action, and an affidavit sworn to by the president of the plaintiff’s company, and an affidavit sworn to by one of the attorneys of the plaintiff, an order of arrest was obtained from one of the justices of this court, and in pursuance of said order, the defendant has been arrested and compelled to give bail for his appearance in this action, consisting of two sureties, justifying in the sum of ten thousand dollars each.
The defendant moves upon affidavits made in his behalf, and also upon the complaint and affidavits of the plaintiff upon which the order of arrest has been *82 granted to vacate the order of arrest, or for a reduction of bail.
Subdivision 1 of section 179 of the Code, provides that a defendant may be arrested in an action for the recovery of damages, on a cause of action arising out of contract .... where the action is for an injury to person, to character, &c., &c. Section 180 prescribes that an order for the arrest of a defendant must be obtained from a judge of the court in which the action is pending, and according to section 181, the order may be made by the judge, whenever it shall appear to the judge, by the affidavit of the plaintiff or of any other person, that a sufficient cause of action exists, and that the case is one of those mentioned id section 179. These provisions do not give to the plaintiff an absolute right to an order of arrest; the language of the Code is permissive only ; the words of the Code are not that the judge shall make the order, but merely that the order may be made. It therefore rests in the sound discretion of the judge to grant or refuse the order.
In Davis v. Scott, 15 Abb. Pr. 127, Daly, F. J., says that it is a proper exercise of that discretion to grant the order of arrest Only in actions of assault, of battery, libel or slander, where it would have been granted under the former practice, or in extreme causes of very outrageous batteries, or when it is shown by affidavit that the defendant is a non-resident; or from facts and circumstances, and there is good reason to believe that he is about to, or may, depart from the State and at the same time the learned jurist proves by authorities that by the practice established in the supreme court when the Revised Statutes went into effect (1828), an order would not be granted for the arrest of the defendant in actions of assault and battery,libel or slander, except slander of title, unless the defendant was a transient person, or was about to depart from the State, or unless in very extreme cases of violent *83 and cruel batteries, and shows that a strict adherence to the salutary rule referred to by him which has pre-. vailed in this State from an early period, is not inconsistent with the provisions of the Code.
The granting of the order of arrest in this matter was therefore a matter of discretion for the judge granting the same. The plaintiff seems to. agree to this proposition, but strenuously insists that the exercise of that discretion by one judge will not be reviewed by another. Section 204 of the Code provides that a defendant arrested may, at any time before judgment apply on motion to vacate the order of arrest or to reduce the amount of bail, and it has been well settled that the motion referred to in this section may be made before the judge who granted the order, or to any other judge. In the latter case it belongs to the class of motions; termed non-enumerated motions, which must be made upon notice to the adverse party, and which, according to the rules of this court in force at the present time, should be heard at special term only. To deny to a defendant arrested upon an order of a judge made out of a court a hearing would indeed be a great hardship. A Judge, upon granting an order of arrest, is only bound to see that the plaintiff presents a. prima facie case, and if, at the same time, the plaintiff tenders a sufficient undertaking to the effect that if the defendant recover judgment, the plaintiff will pay all' costs that may be awarded to the defendant, and all damages which he might sustain by reason of the arrest, not exceeding a certain sum, which is to be specified in the undertaking, and which shall be at least one hundred dollars, an order of arrest under our present system of practice is very often granted as a matter of course. In such case the judge granting the order hears only one side; the plaintiff’s statement may be highly colored and strained ; different conclusions may be drawn from them : the Judge applied to, being *84 pressed with other business* has not the time to examine them very minutely, but grants the order in the expectation that if the defendant is able to overcome or explain the case, as made by the plaintiff, he will not neglect-to do so, and set himself right before the court either upon the plaintiff’s own papers, or upon new affidavits prepared on behalf of the defendant. 3STor can I subscribe the proposition advanced by the learned counsel for the plaintiff, that the defendant, by giving bail, has precluded himself from questioning the sufficiency of the plaintiff’s complaint and original affidavits to sustain the order.
The case of Stewart v. Howard, 15 Barb. 26, cited in support of this theory, simply decides, that a person arrested on civil process waives his personal privilege from arrest as a witness by giving bail; and the case of Dale v. Radcliffe, 25 Barb., 333, is not in point now, for the reason that at the time of the decision made in that case a defendant arrested under the provisions of the Code was compelled to move to vacate the order of arrest before the justification of Ms bail. As the code now stands, he may move at any time before judgment, and section 183 provides further that an order of arrest shall, be of no avail, and shall be' vacated or set aside on motion, unless "the same is served upon the defendant, as provided by law, before the docketing of any judgment in the action, and that in all cases the defendant shall have twenty days after the service of the order of arrest in which to answer the complaint in the action, and to move to vacate the order of arrest, or to reduce the amount of bail.
Having thus disposed of some of the most important preliminary questions raised upon the argument of this case, and passing over others raised partly by the plaintiff, and partly by the defendant, but which I do not deem of great importance, I proceed to examine the application upon the merits involved in it. On the *85 part of the defendant the right of the plaintiff to bring this suit as a corporation has been questioned. The books contain but three precedents for such action by a corporation: Trenton Ins. Co. v. Perrine, 3 Zab. 402, decided in New Jersey; Metropolitan Saloon Co. v. Hawkins, 4 Hurl. & N. 87, decided in England; Shoe and Leather Bank v. Thompson, 18 Abb. Pr. 413, decided in New York.
In all these cases the language used was defamatory. The right to bring the action was based on the damages sustained by the property of the companies, or to use the language of Pollock, C.B., in the English case, “A corporation may maintain an action for libel, by which its property is injured.”
“The true rule,” says Ingraham, P.J., in the Shoe and Leather Bank case already referred to, “ seems to be as to the power of corporations to maintain actions, that they may do so in all cases necessary for the preservation of their property and rights, and for the recovery of any damages occasioned by the wrongs of others, but not for those damages to person and character for which an individual may recover unconnected with loss or injury to property.”
This being, therefore, in some respects, a new remedy, it will not be more extensive than analogous remedies given to individuals—nay, it necessarily must be more limited. But analogies may be borrowed from the former as follows :
If the alleged libel must be defamatory as to an individual, it must be so as to a corporation.
If express malice would be necessary in the one case, it is in the other.
The necessity of an averment, and the mode of averment of special damages, and the mode of proof, if necessary in the one case, is necessary in the other.
Upon a careful consideration of the principles involved in such cases, I have come to the conclusion that *86 a corporation engaged in a business in which credit may be material to its success, may maintain an action of libel without proof of special damage, where the language used concerning it is defamatory in itself, and injuriously and directly affects its credit, and necessarily and directly occasions pecuniary injury; blit that in all other cases the averment and proof of malice and special damage is necessary.
And I am also of the opinion that whenever a corporation is entitled to maintain an action of libel in the cases specified, it may also procure an order for the arrest of the defendant under section 179 of the Code, as a provisional remedy in that action. In such case, the word “ character,” contained in the first subdivision of section 179,* must be. construed to mean “ business, character.”
It remains, therefore, to inquire whether, upon the cash as made by both sides, sufficient grounds appear for the arrest of the defendant.
The complaint embraces five counts. The first count sets out the following language, taken from the Life Insurance Chart hereinbefore referred to as one of the libels complained of: “Knickerbocker stockholders are entitled to thirteen per cent, annually, on capital, over legal interest; dividends declared to policy holders the 6th year, and annually thereafter.”
The second count sets out the same language, and the following passages, as an additional libel:
“Knickerbocker. Dividends when applied on— life, 6th year.—Endowment, 6th year.—Ten years, 6th year.”
In the 3rd, 4th and 5th counts, the plaintiff complains of the following passage, appearing in the advertisement inserted by the defendant in three public journals published in the city of New York:
“Knickerbocker, 161 Broadway, N. Y. Stockholders are entitled to twenty per cent, of the profits, *87 besides an interest dividend in the capital. . . . Interest and profit dividends paid to stockholders on one hundred thousand dollars capital, from 1853 to 1867, one hundred and thirty-nine thousand three hundred and ten dollars and sixty-five cents.’.’
* The plaintiff claims that the defendant, by the several publications aforesaid, intended to charge, and to induce people to believe, that stockholders in said company were entitled to receive, and did receive a dividend of thirteen per cent, over legal interest on the stock held by them therein; that no dividend was declared to the holders of policies issued by the company until the sixth year after the issuing of the same, whether the said policies were issued for the term of the natural life of the person insured thereby, or whether they were endowment policies,' or policies having ten years to run ; that stockholders in said company were then entitled to receive, and that they did therefor receive twenty per cent, of the profits of said company, besides an interest dividend on the amount of capital stock held by them respectively, and that there had been paid to stockholders in said company, from 1853 to 1867, the sum of one hundred and thirty-nine thousand three hundred and ten dollars and seventy-five cents, on a capital of one hundred thousand dollars.
The plaintiff further claims and alleges, that in truth and in fact stockholders in said company were not entitled to, and did not receive, a dividend of thirteen per cent, annually over legal interest on their stock; that dividends were then declared to policy holders before the sixth year after their policies were issued ; that stockholders in said company were not entitled to and did not receive a dividend of twenty per cent, of the profits, besides an interest dividend on the amount of capital stock held by them respectively, nor had said company paid to stockholders the sum of one hundred and thirty-nine thousand three hundred' and *88 ten dollars and seventy-five cents as interest and profit dividends on one hundred thousand dollars capital, from 1853 to 1867.
The plaintiff, in the 1st, 3rd, 4th and 5th counts further charges, upon information and belief merely, that at the time of publication the true state of affairs was well known to the defendant; the second count contains no such allegation.
Each of the counts set forth in the complaint contains a further allegation, that the defendant well knowing the premises, but intending to destroy the reputation of said plaintiff and injure its business, did compose and publish the matters complained of. This is the only allegation contained in any of the plaintiff’s papers used on this motion, charging malice or an evil intent on the part of the plaintiff. The affidavits of the plaintiff do not charge the defendant with malice or any evil intent whatever, nor set out a single fact from which the same could be inferred.
Each of the five counts embraced in the complaint concludes with the following specification of special damage:
“ That by reason of the premises a large number of persons refused to take policies of insurance issued by this plaintiff, or to make application to the plaintiff for insurance, whereby said plaintiff was injured in its reputation and business and lost a large amount of premiums which it would otherwise have received, and whereby it sustained large damages,” &c., &c., &c.
None of the affidavits contain a further specification of damage, nor any facts from which the extent of the plaintiff’s damage, if any, could be seen.
The president of the Knickerbocker Life Insurance Company, in an affidavit sworn to on February 2, 1869, further shows, that the stockholders in said company “prior to January 1, 1868, had not received on an average exceeding two per cent, annually over legal *89 interest on their capital stock, and that the total amount of interest and profit dividends paid to the stockholders of said company from 1858 to 1867, did not exceed one hundred and fifteen thousand dollars,” &c., &c.
The foregoing statement contains substantially all the material facts upon which the plaintiff relies. The language complained of, not been actionable per se, the averment and proof of malice and special damage is necessary. This the plaintiff attempted to set forth in the complaint which is sworn to by the president of the company, and has been used as an affidavit upon the application to obtain the order of arrest. But frequently a sworn complaint will not be alone a sufficient foundation for the order of arrest, for the reason, that although the averments may be sufficiently specific to sustain the complaint, as such, they may not be sufficiently so to sustain an order of arrest. Thus, in an action of malicious prosecution, it is enough for the complaint to set out,' in general terms, malice and want of probable cause. But to sustain an order of arrest this is not enough. The facts relied on as presumptive evidence of want of probable cause must be set forth in the affidavit, so as to enable the judge to whom the application is made, to draw the proper conclusion of law. If such facts are omitted the party swears only to his own belief, and thus his own opinion or that of his counsel is substituted for a judicial decision. Vanderpoel v. Kissam, 4 Sandf. 715.
In the same manner it is necessary in this case that the complaint in this action should not only charge, that at the time of publication the true state of affairs was well known to the defendant (and this is done merely upon information and belief), that the defendant, intending to destroy the reputation of the plaintiff, and injure its business, did compose and publish the matters complained of, and that the plaintiff sustained the damages alleged therein, but that the affidavits of *90 the plaintiff should contain sufficient facts, from which, the judge or court can see, that the defendant must have known the true state of affairs, that he was actuated by malice in making the publication, and that the plaintiff suffered damage in consequence thereof. This the plaintiff did not do, although his counsel seems to have been fully aware of the necessity thereof, for an affidavit was attached to the verified complaint sworn to by the president of the Knickerbocker Life Insurance Company on the same day the complaint was verified, in which the said president swears that he has _ read the complaint in this action and knows the contents thereof, and then goes on and confines himself to show in what respects the publications of the defendant were false, but wholly omits to swear that the allegations contained in the complaint are true. The same omission occurs in the affidavits read by the plaintiff in opposition to the motion to vacate the order of arrest; so that upon the plaintiffs’ own papers I am asked to uphold the order of arrest upon the bare fact of the publication of a statement not defamatory in itself, the , falsity of the same in some particulars, and an allegation of damage, the extent of. which, if any occurred, I cannot ascertain. As the words complained of are not libelous on their face, the plaintiff is bound to show by facts and circumstances, how they become libelous, and that the defendant at the time of their publication knew their libelous character. Presumption of malice can only arise when the publication, on its face, is capable of conveying an injurious effect. Every man is presumed to foresee and intend all the mischievous consequences that may justly be expected to flow from his voluntary acts. But the cases of constructive malice are exclusively such as involve words capable of bearing in themselves a libelous meaning. The law in such cases reasonably presumes no more than this, and when a hidden defamatory meaning is *91 sought to be attributed to words in themselves innocent, and on their face containing no such sense, by extrinsic facts outside and independent of the publication itself, the knowledge of such facts must be shown by averment and proof to have existed in the breast of the defendant at the time of publication.
The words complained of do not even necessarily imply a charge of mere mismanagement against the company or its officers; on the contrary, as long as the public remain divided in opinion as to the best plan upon, which life insurance companies should be organized and carried on, the statements published by the defendant concerning the plaintiff may be looked on by many as highly eulogistic of the safe and prudent manner in which the affairs of the plaintiff’s company have been heretofore conducted ; they may, with many people, amount to a positive recommendation, for they certainly tend to demonstrate that so far the plaintiff’s company has been very careful in assuming risks, and fortunate besides. The words being capable of this interpretation, the burden of proof is upon the plaintiff to show by facts and circumstances that they were used in a libelous sense, and that the defendant was actuated by malice. The plaintiff has failed to do so.
The defendant, on the other hand, shows by affidavit that he has been for over fifteen years past a resident of the city of New York, that he is a man of family, has been a tax-payer on personal estate in the said city for several years, and that he has no intention to leave the same or remove therefrom ; that he was from 1850 to 1868, one of the editors and proprietors of a monthly journal called “The Wall-street Underwriter and General Joint Stock Register,” published in this city; that he has been since September, 1868, the sole editor and proprietor of said publication ; that in the pursuit of his business he frequently had occasion to, and continually does give, to the public, statistical information of the *92 state and condition, pecuniarily or otherwise, of the insurance companies of this and other States devoted to the life, fire, or marine business; that the pamphlet referred to by the plaintiff as “The Life Insurance Chart,” containing the matters complained of in the first and second causes of action, is a truthful compilation, gotten up by him from extracts from the original verified statements filed in the New York Insurance Department, of forty-four life insurance companies in the United States, and was not a publication directed at the Knickerbocker in. particular, any more than at the other forty-three companies named in it. The defendant then goes on and shows how he compiled the facts published in said Chart, and in the advertisements complained of in the third, fourth, and fifth cause of action ; that at the time of the publication he had every reason to believe, and did believe, they were true; that the publication was made with good motives and justifiable ends ; and finally concludes by showing how in some particulars he was misled partly by the returns and statements and charter of the plaintiff’s-company, and partly by statenaents contained in the ninth annual report of the superintendent of the insurance department of this State, as printed by order of the legislature for the year 1868; that he is a policy-holder in the plaintiff’s company since the year 1867; that said policy is , on his own life in favor of his wife for the sum of three thousand dollars, and that several years ago he induced other persons to insure in plaintiff’s company.
The defendant, then, not only denies all the allegations of the plaintiff, so far as it may become necessary for him to deny them, but in addition thereto he presents facts and circumstances which stand forth uncontradicted, and which, as the case stands before me, almost conclusively prove that no such malice or evil intent towards the plaintiff as has been charged against *93 him ever existed in point of fact. The defendant shows that he made the statements complained of in the course of his business, believing them to be true, and that they contain no libel, for a libel consists of a malicious publication.
After carefully sifting and duly weighing the evidence placed before me by both sides, I can come to no other conclusion, and I think that the defendant is entitled to his discharge. If the rule in a case like the one before ine were otherwise, no newspaper could give to the public statistical information relating to any corporation or company without becoming involved in endless litigation ; the slightest inaccuracy, to which the ingenuity of counsel could attach an injurious meaning in the remotest degree, would be seized upon and used as the foundation for a long libel suit, and a portion of our press might thus be deterred, in order to escape the annoyance, trouble, and expense in this respect, from giving to the public such general information concerning the organization, inside workings, operations, and profits of large and wealthy corporations and companies (relying for their support mostly upon popular favor, and the patronage of the working classes), which the people at large have a right to demand, and which they cannot very well receive through any other channel except a free, fearless, and independent press.
The order of arrest must be vacated, with ten dollars costs.
Freedman, J.
In the opinion delivered by me on the motion to vacate the order of arrest in this action, I held, among other things, that this action can be maintained only by averring and proving special damage, which in the complaint is set forth as follows :
“ That by reason of the premises a large number of persons refused to take policies of insurance issued by *94 this plaintiff, or to make application to the plaintiff for insurance, whereby said plaintiff was injured in its reputation and business and lost a large amount of premiums which it would otherwise have received, and whereby it sustained large damages, to wit,” &c., &c.
The defendant now moves that the plaintiff be compelled to make the complaint more definite and certain by setting forth the names of the persons who refused to take out policies of insurance, and who declined to make application to the plaintiff for insurance, &c., &c. Although the complaint may be sufficiently definite and certain on demurrer, yet the defendant’s remedy before answer, by motion, cannot be questioned. Upon an application of this kind it may be laid down as a general rule that where the plaintiff s right to recover depends upon the question whether he sustained special damage,—where the special damage is the foundation of the cause of action,—it is a material allegation, and must be fully and accurately stated (Vanderslice v. Newton, 4 Comst. 133; Solms v. Lias, 16 Abb. 311) ; or the plaintiff cannot prove it on the trial, Law v. Archer, 2 Kern. 282 ; Squire v. Gould, 14 Wend. 159.
The same rule applies to actions of libel and slander.. Thus, in Hallock v. Miller, 2 Barb. 630, it was decided by the general term of the supreme court, at Albany, Harris, Paige and Parker, JJ., that in an action for slander, by which the plaintiff lost his customers in trade, the plaintiff cannot prove that any persons not named in the declaration left off dealing with him in consequence of the words spoken, and in Hartley v. Herring, 8 Term R. 133, Lord Kenyon says, that a plaintiff who brings an action for slander by which he lost his customers in trade, ought, in his declaration, to state the names of those customers, in order that the defendant may be enabled to meet the charge if it- be false.
In Tobias v. Harland, 4 Wend. 537, which was an *95 action to recover damages for slanderous words spoken of articles manufactured by the plaintiff, whereby divers persons refused to purchase them, Maroy, J., held:
“ Special damages are not so alleged in the declaration that proof of them could be received on trial. The general allegation of the loss of customers is not sufficient to enable the plaintiff to show a particular injury. If the plaintiff in this suit can recover at all, it must be because the words are actionable in themselves.”
And in Linden v. Graham, this court held, at general term, February, 1853, Oaklet, Ch. J., and Campbell and Bos worth, JJ.,. that in an action for slander of title, whereby the plaintiff was prevented from obtaining a loan on the mortgage of the property, or from selling it, it is essential to stating a cause of action, to name the person or persons who refused for that cause, to loan or purchase, and that if not named the complaint may be demurred to upon the ground that no cause of action is stated. In this conclusion the judge who made the order appealed from concurred (See also Kendall v. Stone, 1 field. 14; Shipman a. Burrows, 1 Hall, 399 ; Terwilliger v. Wando, 17 N. Y. 54).
The authorities cited fully sustain the defendant’s application.
The cases relied on by the plaintiff are insufficient to establish a contrary doctrine. I will notice a few of them. Hartley v. Herring, 8 Term R. 130 (hereinbefore cited), was an action for damages by a clergyman employed to preach at a chapel. He lost his office entirely, and his declaration was held sufficient on that ground.
In Hargrove v. Le Breton, 4 Burr. 2422, which was an action for slander of title; three points were raised on a motion for a new trial, but the point as to the *96 sufficiency of the pleading in regard to the special damage alleged was not passed on by the court.
Westwood v. Cowne, 1 Stark. 172, was an action for vexatious and irregular distress.
The note of Sergeant Williams in 2 Saund. 411, does not refer to actions of libel.
In Evans v. Harris, 1 Hurls. & N. 251, and 38 Eng. Law & Eg. 347, the words were actionable per se.
The case of the Trenton Mut. Life and Fire Ins. Co. v. Perine, 3 Zab. 402, admits the general principle as contended for by the defendant. As the plaintiff has not shown, either iii the complaint or by affidavit, that the persons referred to were either unknown to the plaintiff, or too numerous, or that it is inconvenient to name them, although an affidavit has been read on behalf of the plaintiff on this motion on other points, the plaintiff has not brought itself within the exception laid down by the last case. Again, the special damages are set forth in the complaint in this action, not merely on information and belief, but in positive terms, and the complaint is sworn to by the president of the company, and it may therefore be fairly presumed that the plaintiff is able to give the specification required by the defendant.
The defendant’s motion is in accordance with the system introduced by the code, which abolished the general issue, and prescribes that the complaint shall contain a plain and concise statement of the facts constituting the cause of action, and requires that a party shall be apprised, before the trial, of the precise issue to be met. Pleadings, under our present system, are required to be reasonably certain and clear in their statement of facts.
Thus, for instance, time and place ought to be regularly inserted, even where not necessary to be strictly proved, and the defendant has generally the right to be informed of the alleged time and place, if the court can *97 see that such information is necessary to enable him to ¿meet and answer the charge made by the complaint.
The provision of the Code permitting a motion to be made to compel a party to make his' pleadings more definite, and certain, furnishes a more summary remedy than existed either in the practice of the common law, or the chancery, courts; and as, under the decisions made in Seeley v. Engell, 13 N. Y. 548, and Farmers’ Bank of Long Island v. Sherman, 6 Bosw. 181, it seems that the defendant would preclude himself from questioning the right of the plaintiff to give evidence on the trial in support of the indefinite allegations by which the special -damage is averred in the complaint in this action, the defendant’s motion should be granted.
Motion granted, with ten dollars, cost.
Points on appeal from the order vacating the order of arrest.
Counsel for appellant urged :—I. The Code specially provides for the arrest of the defendant in an action for defamation. (1.) The defendant may be arrested, as hereinafter prescribed, in the following cases : 1. “In an action for the recovery of damages in a cause of action not arising out of contract, . . . where the action is for an injury to person or character, or for injuring, taking, detaining ■ or converting property.” Code, § 179, subd. 1. (2.) The policy of the Code in this regard is clearly apparent from the subsequent clause, making even females subject to arrest under this subdivision, though expressly exempted from arrest for the causes mentioned in the succeeding subdivisions : “But no female shall be arrested in any action, except for a willful injury to person, character, or property.” § 179, subd. 5. (8.) The only condition to the exercise of the right, which the Code prescribes, is the procurement of an order for the arrest, which is to be made “where it shall appear to the judge, by the *98 affidavit of the plaintiff, or of any other person, that a sufficient cause of action exists, and that the case is one of those mentioned in section 179.” (4.) The necessity for this right of arrest is apparent to the courts, no less than to the legislature, (a.) There is no preventive relief in equity by injunction to restrain continuing, the defamation. (b.) The' party injured would be wholly without redress for his civil injury by an irresponsible libeler, who, but for this provisional remedy, could go on with impunity, from day to day, defaming the character of women, traducing.the acts and motives of those in official positions, destroying the credit and business of corporations and individuals, and inflicting continuous and irreparable mischief.
II. The order appealed from-was erroneously made, because the granting of the order of arrest was matter of discretion, and the exercise of that discretion by one judge should not be reviewed by another, where the new facts do not substantially and effectually subvert the case originally made' before the judge (Code, § 181; Davis v. Scott, 15 Abb. Pr. 127).
III. It is true that by giving bail, the defendant did not preclude himself from the right of moving to vacate the order of arrest, but on such motion he is precluded from raising any question of previous irregularity, or from questioning the sufficiency of the original affidavits to sustain the order. The motion must be granted, if at all, on new and independent facts (Stewart v. Howard, 15 Barb. 25 ; Dale v. Radcliff, 25 Id. 333). No new and independent facts were presented by the defendant on the motion.
IY. The corporation is entitled to maintain the action for defaming its business reputation to its injury in its dealings with the public (Trenton Mut. Life & Fire Ins. Co. v. Perrine, 3 Zabriskie, 403 ; Herring v. Stewart, 3 Esp. 437; Shoe & Leather Bank v. Thompson, 18 Abb. Pr. 417 Metropolitan. Saloon & *99 Omnibus Co. v. Hawkins, 4 Hurl. & N. 87; Towns, on Libel & Slander, § 264).
Y. The right of the plaintiff to maintain such an action is, in fact, conceded in the opinion of the court delivered at special term; but it was there held that the language complained of was not actionable per se, and that the averment and proof of malice and special damage were, therefore, necessary. It is respectfully submitted that the assumption that the language complained of is not actionable per se, is not warranted by the facts, or supported by any sound principle of law. 1. Character, as applied to a corporation like this, means business reputation. From the very nature of the case, therefore, a libel upon a corporation is a false publication which injuriously affects its business reputation. A publication which does not produce this result, is not libelous in itself, nor can it be made so by any special averment. Hence, when the publication is of such a nature, that its necessary and natural tendency is to injure the business and reputation of the corporation, it is libelous per se. 2. The libel in this case was of a grossly injurious character, and its manifest purpose and natural tendency was to deter insurers from taking policies in the company. («..) Its obvious purpose was to impute to the stockholders the appropriation of inordinate profits to themselves, and the fraudulent withholding of profits which should have gone to the policy holders ; thus preventing new policies from being taken out, to the prejudice alike of policy holders and stockholders, (b.) It falsely alleges that policy holders are entitled to no dividends until the sixth year; an allegation which, if true, would naturally cause persons desiring to insure to seek other companies in which they could have the benefit of more frequent dividends, (e.) It falsely alleges that the stockholders are entitled to twenty per cent, dividends besides legal interest, and this when the libeler had *100 notice from the sworn reports of the company as well as from the letter of their attorney, that, in each of its parts, the charge was false, {d.) The libel falsely alleges that between 1853 and 1867 the stockholders received on one hundred thousand dollars capital, one • hundred and thirty-nine thousand three hundred and ten dollars and seventy-five cents in interest and profit dividends. 3. It is no answer to this view of the case to suggest that “as long as the press and the public remain divided in opinion as to the best plan upon which life insurance companies should be organized and carried on, the statement published by the defendant concerning the plaintiff may be looked upon by many as highly eulogistic of the safe and prudent manner in which the affairs of the plaintiff’s company have been heretofore conducted; because if public opinion is divided and the statements are false, it necessarily follows that one class, at least, will be deterred by these falsehoods from dealing with the company. This very suggestion, in fact, shows most conclusively that the language complained of is libelous per se.
VI. These statements being injurious and false the law imputes to the defendant an injurious intent (King v. Boot, 4 Wend. 113).
VII. The complaint contains a special averment of malice in the publication. Whether the intent was actually malicious or not is a question to be determined, ( not by the defendant’s denial of the averment, but by judgment of law in case of demurrer, and by the verdict of a jury in case oí an issue. But if it were competent for the court, upon this appeal, and on the papers now before it, to try the issue of malice, which is raised by the defendant’s denial, it would find the evidence against him clear and decisive.
VIIÍ. The defendant cannot protect himself against the consequences of.Ms own acts, by pleading that the company had been libeled .by some one else, and that *101 he did not know bnt the charges he made might be true (Sandford v. Bennett, 24 N. Y. 20).
IX. For the reasons assigned under the fifth point, no averment of special damage was necessary; but special damage is, in fact, alleged, and the sufficiency of the averment is shown by the decisions in 3 Zabriskie and 18 Abb Pr., cited under’ the sixth point. Whether the averment is sufficiently definite and certain, is a question which cannot be considered on this motion.
Counsel for respondent urged:—I. The plaintiff failed to show a cause of action even on his own papers. It is true he alleges that he is a corporation, that he has been conducting a profitable business for a long time in the city of New York, and it is true that he makes a general allegation that he has been damaged, in the sum claimed by him ; but he utterly fails to show any particular or special damages sustained by him in consequence of the alleged libelous publication. The general allegation of damages in his complaint and affidavits would not entitle him to make a case of libel or slander out of a cause of action requiring for its essence allegations and proof of special damage. Merely to allege that he has lost customers or business by reason of the alleged libelous publication is not enough. He must go further, he must give particulars of who and what he has lost—giving names (Solon v. Lias, 16 Abb. Pr. 311; Hallon v. Belcher, 42 Barb. 199 ; Squires v. Gould, 14 Wend. 159 ; Bogart v. Burkhalter, 2 Barb. 525 ; 1 Chit. Plead. 428 ; Shoe & Leather Bank v. Thompson, 18 Abb. Pr. 413 ; Hewitt v. Mason, 24 How. Pr. 466 ; Evans v. Harland, 52 Barb. 624; Shipman v. Burrows, 1 Hall, 399 ; Lowden v. Graham, 1 Duer, 670; Fein v. Lindon, 3 B. & P. 372; Tobias v. Howland, 4 Wend. 537; Kendall v. Stone, 1 Seld. 18 ; Mayne on Damages, 278-317). He must name the *102 customers he lost (Hartly v. Harring, 8 Term R. 133; Hallock v. Miller, 2 Barb. 630). Such being the case, it is an essential element for the plaintiff, even in order to get a standing in court, in addition to the other essential elements necessary to sustain an action for libel, not only to aver but to prove special damages. This is peculiarly the case with corporations who do not possess character like individuals. It is well settled by authority, that a corporation aggregate possesses “no soul,’’ they possess no character; but they may acquire a business which if injured will entitle them to reparation at the hand of the libeler, but that cannot be left to hypothesis. It depends on allegation and proof. The following cases settle this question: Shoe & Leather Bank v. Thompson, 18 Abb. Pr. 413 ; Trenton Mut. Fire & Life Ins. Co. v. Perrine, 3 Zabriskie, 402. These authorities establish that in order for the corporation to maintain an action for libel they must allege and prove special damage. There is no case in the books which has held that a corporation is entitled to recover in an action for libel, even where special damages are alleged and proven, unless the words on their face are defamatory. The two cases cited, viz: of 3 Zabriskie and of 18 Abb. Pr., are of cases where the alleged libels were on their faces defamatory. The case in 18 Abb. Pr. is imperfectly reported, as we show by the original case read. See correct report at special term in 23 How. Pr. 253.
II. The alleged libelous publication, when considered carefully, presents none of the essential elements of libelous matter. It is not, within the language of the authorities, a defamation, expressed either in printing, or otherwise tending to blacken the memory of one who is dead, with intent to provoke the living, or the reputation of one who is alive, or the exposing one to public hatred, contempt or ridicule (Towns, on Slan. 226 ; Wood Inst. 444; 1. Blackst. Com. 150 ; 2 *103 Bouv. Inst. § 2,236). Nor is it a false, censorious or ridiculous writing, picture or sign, made with a' malicious intent towards government, magistrates or individuals (People v. Crosswell, 3 Johns. Cas. 354 ; 9 Id. 214; Fowler v. Bowen, 30 N. Y. 20; Liddle v. Hodges, 2 Bosw. 537; Terwilliger v. Woods, 17 N. Y. 61; Hernott v. Stewart, 1 Esp. 437; Thompson v. Sackett, 1 Moody & M. 187 ; Boynton v. Remington, 3 Allen, 397; Towns, on Sian, note 956, p. 229). A consideration of the alleged libelous matter will show that even if all the facts stated in them of and concerning the plaintiff's were false they would not amount to a libel. In order to make it a libel, parol evidence must be introduced to show that it is a libel; or in other words, witnesses to support its libelous character must be permitted to state their conclusions from the iacts as to the intention of the defendant to apply the words or libel to the party or circumstances denied, which is forbidden by our authorities (5 Johns. 211; 4 Wend. 320; 16 N. Y. 369 ; 2 Denio, 293; Bennett Williamson, 4 Sandf. 60). To return to sober law, the plaintiff’s case is damnum absque injuria.
III. To have sustained his order of arrest, the plaintiff was bound to make out his case beyond all doubt (Mulry v. Collett, 3 Robt. 716; Mecklin v. Berry, 23 How. Pr. 380 ; Allen v. McCrosson, 32 Barb. 662; Levins v. Noble, 15 Abb. Pr. 475). Subdivision 1 of section 179 implies that the plaintiff must make out a cause of action (Swift v. Wylie, 5 Robt. 692; Hernandez v. Carnobelli, 4 Duer, 644).
Points on appeal from order directing the complaint to be made more definite.
Appellant’s counsel urged :—I. The allegations of damage in the complaints are sufficient. It is not necessary to the sufficiency of the complaint in an ac *104 tion for libeling a person in Ms trade, to set forth the particular-instances in which persons have ref used, to deal with the plaintiff. Under averments like those contained in the complaints now under consideration, the plaintiff could give evidence of a general loss or decease of trade, but cannot give' evidence of particular instances of special damage. 1. In a case like the present, any other rule would amount, practically, to a denial of justice. The business of corporations like tne plaintiff is carried on by agencies throughout the whole country. The parties desiring insurance are strangers to the company, except in the particular instances when policies are taken out. , The amount for which a policy is taken out is frequently much- larger. than the party originally applied for. The nature of the business indicates conclusively the impossibility of a compliance with the order of the court, except to a veryjimited extent, and the theory of the plaintiff ia making the motion adopted by the court in its opinion, , would prevent the plaintiff from recovering damages, except for the instances of particular damage which could be identified, while it could be made apparent to the court and jury that large general damages had been sustained by reason of the libelous publications. 2. The complaints in this respect are in accordance with the precedents (Cooke on Defamation, 314; Bull. & L. Prec. 306 ; Mayne on Dam. 367; Ashley v. Harrison, 1 Esp. 48 ; Hartley v. Herring, Term R. 130 ; 2 Stark. on Slan. 64 ; Browning v. Newman, 1 Strange, 666 ; Evans v. Harris, 38 Law & Eg. 347; Trenton Mutual v. Perrine, 4 Zab. 402; Shoe & Leather Bank v. Thompson, 18 . Abb. Pr. 413 ; Westwood v. Cowne, 1 Stark. 137; Lord Arlinton v. Merricke, 2 Saund. 411, note 4; Hargrave v. LeBreton, 4 Burr. 22-24).
II. The general rule as to the necessity of alleging special damage in all cases when sought to be recovered, is not a subject open, as we suppose, for dis *105 cussion. The point is, how must they be stated. Can it be that in a case like that before the court, in which, for the purposes of the argument óf this point, it might be assumed, that by reason of the publication of libelous matter, the entire business of the plaintiff had been put an end to, no damages can be recovered, except for the loss of the persons who can be named by the plaintiff as persons who would have insured but for the publication ? Is it at all probable that one one-hundredth part of the names could be given \ Establish that rule, and the millenium for lib'elers upon corporations can be said to have arrived, for only the customer himself can be admitted to prove the fact (2 Barb. 630; 2 Car, & P. 201).
III. If the action cannot be maintained without setting forth the names of the customers, then the defendant’s remedy is by demurrer or by nonsuit at the trial. It cannot be reached by'motion to make more definite and certain. Such a motion can only be made when the allegations of a pleading are so indefinite or uncertain, that the precise nature of the charge is not apparent, not when no cause of action is stated. The plaintiff in this case is content to prove on the trial general loss of business ; it is not for the defendant to ask the court to compel plaintiff to give proof which shall enable him to recover additional damages (Code, § 160; Brown v. Mich. South, R. R. Co., 6 Abb. Pr. 237).
IY. It is not essential to the decision of this appeal to determine whether the words complained of are libelous per se. If, however, that inquiry should be deemed material, it is respectfully submitted that the weight of authority is that the words are libelous per se, because they affect the credit and standing of the corporation of and concerning which they are published (Towns, on Libel & Slan. § 263 ; Trenton Mutual v. Perrine. 3 Zab. 402 ; Shoe & Leather Bank v. *106 Thompson, 23 How. Pr. 253 ; Hartley v. Herring, 8 Term R. 130 ; Evans v. Harris, 38 Law & Eq. 347).
Eespondent’s counsel urged:—I. As to the order directing the complaint to be made more definite and certain. The authorities on this point are decisive on this. The case in 3 Zab. 414, admits the general rule to be as we contend. The authorities cited at page 415, do not sustain the opinion of the chief justice. See opinion of Freedman, J. In this case the plaifitiff does not show any inability to set forth the particulars required, though affidavits were used by the plaintiff on the motion. The. application must be made no.w, or the defendant would be precluded possibly from raising it on the trial (Seeley v. Engell, 13 N. Y. 548; Farmers’ Bank v. Sherman, 6 Bosw. 181). It is in accordance with the present system under the Code. See opinion.
By the Court.—Monell, J.
I think both orders should be affirmed : the order discharging the arrest for the very satisfactory reasons stated by the learned justice at special term, and the other for the reason that if the averment of special damage is made definite in the particulars specified in the order, there will be a prima faeie cause of action against the defendant. We all agree, that without proof of special damage, the action cannot be maintained; in other words, we agree that with proof of special damage it may be maintained. As an allegation in a pleading, I think it would be sufficient, if- it contained the matter required by the order ; and that, it seems to me, is the only question before us on this appeal.- The matter alleged against the defendant, is not per se libelous ; but if the plaintiffs can satisfy a jury that such matter is injurious to them, and was maliciously published, they can re *107 cover, if they also show that they have been specially damaged.
Freedman, J., concurred.
Orders affirmed, with costs.